In the

# United States Court of Appeals

### For the Seventh Circuit

No. 09-3640

TERESA KOTWICA,

*Plaintiff-Appellant,*

*v.*

ROSE PACKING COMPANY, INC.,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 07 C 05262—**Joan Humphrey Lefkow**, *Judge*.

ARGUED OCTOBER 19, 2010—DECIDED MARCH 22, 2011

Before CUDAHY and ROVNER, *Circuit Judges*, and
ADELMAN, *District Judge*.[1]

CUDAHY, *Circuit Judge*. On March 13, 2006, Rose Packing
Company, Inc. fired Teresa Kotwica, a general laborer in
its meat packing plant, because it believed that her newly-
imposed medical restrictions made it impossible for her

---

[1] The Honorable Lynn S. Adelman, District Judge for the
Eastern District of Wisconsin, sitting by designation.

to perform her job duties. Kotwica sued Rose Packing, alleging that its decision to fire her violated the American with Disabilities Act's (ADA) anti-discrimination provisions. The district court granted summary judgment against Kotwica, finding that she had failed to present sufficient evidence establishing that she qualified for protection under the ADA. We affirm.

## I. Background

In 1996, Teresa Kotwica began working as a general laborer at Rose Packing Company, Inc., an Illinois corporation that operates a meat packing facility on Chicago's South Side. Rose Packing employs several hundred individuals as general laborers at its plant. All of the general laborers are members of the United Food and Commercial Workers International Union, Local 1546, and the terms of the general laborers' employment is set forth in a collective bargaining agreement that the Union negotiated with Rose Packing. In accordance with this agreement, general laborers perform a number of functions at the plant and are regularly rotated through various positions within different departments. The work performed by the general laborers includes tasks involved in the boning, curing, processing, smoking, packing, cooking and shipping of various meat products. In accordance with the terms of the collective bargaining agreement, Rose Packing requires all of its general laborers to rotate through all of these tasks. The company has provided two justifications for its rotation policy: (1) the company needs to be able to shift laborers to

various positions to compensate for fluctuations in the types of tasks it needs performed and (2) the rotation helps minimize the risks posed by repetitive motion workplace injuries.

During the period of time relevant to Kotwica's claim, Rose Packing had a return to work policy that, on its face, strictly prohibited individuals who suffered non-work-related injuries from returning to work if their injuries left them with any medical restrictions. Under this policy, only individuals with full medical releases from their medical providers were permitted to return to their positions. At some point subsequent to Kotwica's termination, Rose Packing amended its return to work policy. The company's new policy no longer distinguishes between personal and work-related injuries and states that it will attempt to accommodate all employees' injury-related restrictions.

Toward the end of 2005, Kotwica's doctor recommended that she have a total hip replacement. Shortly thereafter Kotwica notified Rose Packing that she would be undergoing surgery and that she would be taking twelve weeks of leave in order to recuperate. Linda Madlener, Rose Packing's in-house nurse, told Kotwica in November of 2005 that the company was expecting her to return to work without any medical restrictions at the end of her twelve-week leave. Even if Madlener had not provided Kotwica with this notification, the record suggests that Kotwica would have known of Rose Packing's return to work policy, as Rose Packing had previously required her to obtain a full medical release

after she had taken a leave of absence related to a personal injury.

Kotwica underwent hip replacement surgery on December 1, 2005, and, approximately twelve weeks later, attempted to return to her general laborer position. At the beginning of February of 2006, Rose Packing received a return to work authorization letter prepared by Kotwica's physician that indicated that Kotwica would be unable to perform a number of physical activities that were involved in the performance of a general laborer's duties. Rose Packing communicated with Kotwica's doctor and informed him that any permanent restrictions would prevent Kotwica from being able to return to work. The physician revised his authorization letter, which then indicated that Kotwica was permanently restricted from "heavy lifting, squatting, crawling or climbing" and that she could not lift more than twenty-five pounds.

Because Kotwica had not provided Rose Packing with an authorization letter that conformed with its policy, Rose Packing requested that she meet with the company's in-house physician for an alternative assessment of her capabilities. On March 13, 2006, Kotwica met with Dr. Joseph Laluya, the company's doctor, who performed a return to work physical evaluation. One part of this evaluation required returning general laborers to show that they could lift at least fifty pounds, a task that Kotwica could not perform without violating her personal physician's orders. Laluya deferred to Kotwica's physician's orders and did not ask Kotwica to complete

this task. In his post-examination report, he indicated that Kotwica could not complete the physical ability test and that he was not clearing her to return to work. Later that day, Rose Packing notified Kotwica that she was being terminated in accordance with the company's return to work policy.

On September 28, 2007, Kotwica filed a single-count complaint alleging that Rose Packing violated the Americans with Disabilities Act by firing her due to her medical restrictions. On November 3, 2008, the parties filed cross-motions for summary judgment. On September 25, 2009, the district court granted Rose Packing's request for summary judgment, finding that Kotwica had not established that she qualified for protection under the ADA. Kotwica filed a timely appeal from the district court's judgment.

## II. Discussion

Kotwica's suit against Rose Packing presents a single, relatively straightforward disability discrimination claim. She claims that Rose Packing ran afoul of the ADA when it relied on her physical limitations as grounds for refusing to let her return to work after her hip replacement surgery. She states that her post-surgery medical restrictions would not have prevented her from being able to perform a general laborer's essential duties and argues that, even if her restrictions might have hindered her ability to do certain tasks, Rose Packing failed to meet its obligation to reasonably accommodate her limitations. On appeal, Kotwica contends that, at a mini-

mum, she presented the district court with evidence sufficient to create genuine issues of fact and asks us to reverse the district court's grant of summary judgment.

We review a district court's grant of summary judgment under the de novo standard, *Narducci v. Moore*, 572 F.3d 313, 318 (7th Cir. 2009), examining the record in the light most favorable to the non-moving party, *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 406 (7th Cir. 2009). In order to establish a prima facie case of failure to accommodate in accordance with the ADA, "a plaintiff must show that: (1) she is a qualified individual with a disability; (2) the employer was aware of her disability; and (3) the employer failed to reasonably accommodate the disability." *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 797 (7th Cir. 2005). To survive a motion for summary judgment, a plaintiff must present the court with evidence that, if believed by a trier of fact, would establish all three elements of her claim. *Ekstrand v. Sch. Dist. of Somerset*, 583 F.3d 972, 975 (7th Cir. 2009).

The district court based its grant of summary judgment against Kotwica's claim on its finding that she had failed to produce evidence sufficient to create a genuine factual dispute as to the first element of her prima facie case, i.e., that she is a qualified individual with a disability. Given this, our review is focused on evaluating whether the district court's decision was adequately supported by the record, taking into account all of the evidence submitted by the parties as well as applicable precedents and statutory provisions.

The version of the ADA that was in effect when Kotwica was terminated defines a "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8) (amended 2009). It further specifies that an individual has a disability if she possesses "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). Given these definitions, it is clear that an individual qualifies for protection under the ADA only if she (1) is a qualified individual with a disability and (2) is able to perform the essential functions of the relevant employment position. *Kupstas v. City of Greenwood*, 398 F.3d 609, 611 (7th Cir. 2005); *Amadio v. Ford Motor Co.*, 238 F.3d 919, 925-27 (7th Cir. 2001). Because we find that the district court was correct in finding that Kotwica failed to satisfy the first part of this test, our discussion focuses exclusively on this issue.

The ADA provides three ways in which a person can be considered a qualified individual with a disability. 42 U.S.C. § 12102(1). Because Kotwica has consistently maintained that her hip problems did not *actually* impair her ability to engage in the major life activity of working, we do not have to consider whether she is a qualified individual with a disability under subsection (A) of 42 U.S.C. § 12102(1). This leaves us to consider whether Kotwica produced evidence sufficient to create

a genuine factual dispute over whether she qualifies because she had a "record of" impairment, 42 U.S.C. § 12102(1)(B), or because Rose Packing "regarded [her] as having" an impairment, 42 U.S.C. § 12102(1)(C). If Kotwica cannot establish that she is a qualified individual with a disability, then her claim automatically fails, as she bears the burden of showing that she falls within the scope of the ADA's anti-discrimination provisions. *See Squibb v. Mem'l Med. Ctr.*, 497 F.3d 775, 786 (7th Cir. 2007).

Kotwica failed to show that she has a record of being impaired from being able to perform any major life activity. In order for an individual to qualify as disabled under subsection (B) of 42 U.S.C. § 12102(1), she must have "a history of . . . a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k). While Kotwica did present the court with various documents establishing that she had hip problems for an extended period of time prior to surgery, the district court was correct to conclude that this evidence did not satisfy her burden. In order to survive Rose Packing's motion for summary judgment, Kotwica needed to produce evidence indicating that her hip problems substantially limited her ability to engage in a major life activity. Not only did Kotwica's evidence fail to establish this point, but other evidence before the court established that the opposite was true. Prior to her surgery, Kotwica's problems were not serious enough to stop her from working on a regular basis; indeed, in the years preceding her operation, she was able to work in the relatively demanding general

laborer position at Rose Packing's plant.[2] Following her surgery, Kotwica has claimed that she is in better physical condition than she was previously and has admitted to working as a receptionist, office inspector and quality inspector for other employers. It is clear that Kotwica's problems never substantially impaired her ability to engage in the life activity of working and that she does not have the type of past record that would place her within the group of individuals that the ADA protects. *See Sinkler v. Midwest Prop. Mgmt. Ltd. P'ship*, 209 F.3d 678, 683 (7th Cir. 2000) (stating that "if [a plaintiff's] condition fails to fall within the definition of impairment set forth in § 12102(1)(A)," it cannot provide the basis for a claim based on having a record of impairment).

Kotwica has also failed to show that Rose Packing regarded her as being disabled. A plaintiff seeking to qualify as disabled under subsection (C) of § 121012(1) must show that the defendant employer believed that she suffered from a physical or mental impairment that substantially impaired her ability to work. *Sinkler*, 209 F.3d at 686. It is not enough, however, for such a plaintiff to prove that the defendant believed that her impairment limited her ability to do a particular job. Rather, she must show that the defendant thought that her im-

---

[2] Kotwica's hip problems did prevent her from working at least once prior to her surgery. However, given the short duration of this break and the fact that it appears that it was an isolated incident, this does not provide grounds for finding that Kotwica has a record of an impairment that substantially impaired her ability to work.

pairment was serious enough to affect her ability to perform a class or range of jobs. *Davidson v. Midelfort Clinic, Ltd.*, 133 F.3d 499, 510-11 (7th Cir. 1998).

It is undisputed that Rose Packing was aware of Kotwica's hip replacement surgery and the limitations that resulted from it. It is also clear that Rose Packing knew that Kotwica's personal doctor had stated that she could not lift objects greater than 25 pounds and that Rose Packing considered this to be the type of permanent medical restriction that would prevent her from being able to perform the tasks required of general laborers. These facts alone, however, are not enough to establish that Rose Packing considered Kotwica to be unable to work generally. *See Fredrickson v. United Parcel Serv., Inc.*, 581 F.3d 516, 523-24 (7th Cir. 2009); *EEOC v. Schneider*, 481 F.3d 507, 510-512 (7th Cir. 2007). In order to meet her burden, Kotwica needed to produce objective evidence establishing that Rose Packing considered her restrictions to disqualify her from a broad class of jobs.

Unfortunately for Kotwica, all of the evidence presented to the trial court indicates that Rose Packing did not take such a dire view of her employment prospects. At Kotwica's termination meeting, Rose Packing's company nurse stated that Kotwica's restriction merely precluded her from working as a general laborer at the plant. The nurse also noted Kotwica's computer and language skills and indicated that she thought Kotwica would be able to easily find a job after leaving the plant. Both of these statements indicate that Rose Packing did not consider Kotwica's impairments to disqualify her from

working in a variety of jobs. Especially in light of the fact that Kotwica has failed to identify any evidence that unambiguously indicates that Rose Packing viewed her restrictions as broadly inhibiting her ability to work, these statements provide adequate grounds to grant summary judgment against Kotwica on this issue. *See Kupstas*, 398 F.3d at 614.

Kotwica argues against this conclusion by claiming that Rose Packing must have viewed her as substantially impaired from being able to work because it did not simply exempt her from all of the tasks she could not perform or, alternatively, because it did not reassign her to a non-laborer position. Neither of these points, however, help her cause. First, we have previously held that the ADA does not impose an obligation on employers to create a new position, which contains a subset of the duties performed by those in an existing position, for individuals with permanent impairments. *See Watson v. Lithonia Lighting*, 304 F.3d 749, 752 (7th Cir. 2002). Second, plaintiffs, when alleging that an employer's failure to reassign them violated the ADA's anti-discrimination provisions, bear the burden of showing that there is a vacant position in existence for which they are qualified. *Ozlowski v. Henderson*, 237 F.3d 837, 840 (7th Cir. 2001); *Hansen v. Henderson*, 233 F.3d 521, 523 (7th Cir. 2000). Kotwica failed to meet this burden since she did not present any evidence establishing that there were vacant positions at Rose Packing at the time of her termination.

### III. Conclusion

For the reasons stated above, the ruling of the district court is

AFFIRMED.