In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-3754

RAYMOND SEVERSON,

*Plaintiff-Appellant,*

*v.*

HEARTLAND WOODCRAFT, INC.,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 14-CV-1141 — **Lynn Adelman**, *Judge*.

ARGUED SEPTEMBER 12, 2016 — DECIDED SEPTEMBER 20, 2017

Before WOOD, *Chief Judge*, and EASTERBROOK and SYKES, *Circuit Judges*.

SYKES, *Circuit Judge*. From 2006 to 2013, Raymond Severson worked for Heartland Woodcraft, Inc., a fabricator of retail display fixtures. The work was physically demanding. In early June 2013, Severson took a 12-week medical leave under the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et seq.*, to deal with serious back pain. On the last day of his leave, he underwent back surgery, which

required that he remain off of work for another two or three months.

Severson asked Heartland to continue his medical leave, but by then he had exhausted his FMLA entitlement. The company denied his request and terminated his employment, but invited him to reapply when he was medically cleared to work. About three months later, Severson's doctor lifted all restrictions and cleared him to resume work, but Severson did not reapply. Instead he sued Heartland alleging that it had discriminated against him in violation of the Americans with Disabilities Act ("ADA" or "the Act"), 42 U.S.C. §§ 12101 *et seq.*, by failing to provide a reasonable accommodation—namely, a three-month leave of absence after his FMLA leave expired. The district court awarded summary judgment to Heartland and Severson appealed.

We affirm. The ADA is an antidiscrimination statute, not a medical-leave entitlement. The Act forbids discrimination against a "qualified individual on the basis of disability." *Id.* § 12112(a). A "qualified individual" with a disability is a person who, "with or without reasonable accommodation, can perform the essential functions of the employment position." *Id.* § 12111(8). So defined, the term "reasonable accommodation" is expressly limited to those measures that will enable the employee to work. An employee who needs long-term medical leave *cannot* work and thus is not a "qualified individual" under the ADA. *Byrne v. Avon Prods., Inc.*, 328 F.3d 379, 381 (7th Cir. 2003).

With support from the EEOC, Severson urges us to retreat from or curtail our decision in *Byrne*. We decline to do so. *Byrne* is sound and we reaffirm it: A multimonth leave of

absence is beyond the scope of a reasonable accommodation under the ADA.

## I. Background

Severson has suffered from back pain since 2005. In 2010 he was diagnosed with back myelopathy caused by impaired functioning and degenerative changes in his back, neck, and spinal cord. Typically Severson's back condition did not hamper his ability to work. But at times he experienced severe flare-ups, making it hard (and sometimes impossible) for him to walk, bend, lift, sit, stand, move, and work.

Severson began working for Heartland in 2006. Over time he was promoted from supervisor to shop superintendent to operations manager. He performed poorly in this last position, so Heartland relieved him of his duties and moved him to a second-shift "lead" position. According to the job description, an employee in this position performs manual labor in the production area of the plant, operates and troubleshoots production machinery, performs minor repairs as necessary, maintains the building, and frequently lifts materials and product weighing 50 pounds or more. Heartland notified Severson of the demotion in a meeting on June 5, 2013. He accepted it but never worked in his new assignment.

Earlier that same day, Severson wrenched his back at home, aggravating his preexisting condition and leaving him demonstrably uncomfortable. He left work early due to the pain and later requested and received FMLA leave retroactive to June 5. Over the summer months, Severson submitted periodic notes from his doctor informing Heartland that he

had multiple herniated and bulging discs in his lumbar spine and was unable to work until further notice. His doctor treated him with steroid injections, to little effect. During this time period, Doug Lawrence, Heartland's general manager, and Jennifer Schroeder, the human resources manager, remained in regular phone and email contact with Severson and approved his requests for continuation of his FMLA leave.

On August 13 Severson called Schroeder and told her that his condition had not improved and he would undergo disc decompression surgery on August 27. He explained that the typical recovery time for this surgery was at least two months. He requested an extension of his medical leave. But he had already exhausted his FMLA entitlement; the maximum 12-week leave would expire on August 27, his scheduled surgery date.

Schroeder did not talk with Severson again until August 26. In a phone call that day, she and Lawrence told Severson that his employment with Heartland would end when his FMLA leave expired on August 27. Schroeder invited him to reapply with the company when he recovered from surgery and was medically cleared to work.

Severson had back surgery as planned on August 27. On October 17 his doctor gave him partial clearance to return to work as long as he did not lift anything heavier than 20 pounds. On December 5 Severson's doctor removed the 20-pound lifting restriction and cleared him to return to work without limitation. Instead of reapplying to work for Heartland, Severson sued the company alleging that it discriminated against him in violation of the ADA by failing to accommodate his physical disability. He pointed to three

accommodations that the company could have offered him but did not: (1) a two- or three-month leave of absence; (2) a transfer to a vacant job; or (3) a temporary light-duty position with no heavy lifting.

Heartland moved for summary judgment, arguing that Severson's proposed accommodations were not reasonable. The district judge agreed and entered judgment for Heartland. Severson appealed. The EEOC filed a brief as amicus curiae in support of reversal.

## II. Discussion

We review a summary judgment de novo, viewing the evidentiary record in the light most favorable to Severson and drawing reasonable inferences in his favor. *Burton v. Downey*, 805 F.3d 776, 783 (7th Cir. 2015). Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

The ADA makes it unlawful for an employer to discriminate against a "qualified individual on the basis of disability." § 12112(a). A "qualified individual" is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." § 12111(8).

The parties agree that Severson had a disability. They also agree that frequently lifting 50 pounds or more is an essential function of the second-shift lead position at Heartland and that Severson was unable to perform this function at the time he was fired. As in many ADA cases, liability thus turns on the accommodation question: Did

Heartland violate the ADA by failing to reasonably accommodate his disability?[1]

Severson identifies three possible accommodations: (1) a multimonth leave of absence following the expiration of his FMLA leave; (2) reassignment to a vacant job; or (3) a temporary assignment to a light-duty position that did not require heavy lifting. The parties focus most of their attention on whether a long-term leave of absence is a reasonable accommodation within the meaning of the ADA. We do the same.

The ADA contains a definition of "reasonable accommodation," but it tells us only what the term *may* include:

> The term "reasonable accommodation" may include—
>
> (A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and
>
> (B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment

---

[1] Severson also accuses Heartland of failing to engage in an interactive process to discuss a reasonable accommodation. "Failure of the interactive process is not an independent basis for liability under the ADA." *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1059 n.1 (7th Cir. 2014). He argues as well that his proposed accommodations would not impose an undue hardship on Heartland. The question of undue hardship is a second-tier inquiry under the statute; that is, the hardship exception does not come into play absent a determination that a reasonable accommodation was available. *See* 42 U.S.C. § 12112(b)(5)(A) (setting forth the undue-hardship exception).

> or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 U.S.C. § 12111(9).

The use of the permissive phrase "may include"—rather than "must include" or "includes"—means that the concept of "reasonable accommodation" is flexible and the listed examples are illustrative. But the baseline requirement found in the definition of "qualified individual" is concrete: A "reasonable accommodation" is one that allows the disabled employee to "perform the essential functions of the employment position." § 12111(8). If the proposed accommodation does not make it possible for the employee to perform his job, then the employee is not a "qualified individual" as that term is defined in the ADA. *Id.* The illustrative examples listed in § 12111(9) are all measures that facilitate work.

Putting these interlocking definitions together, a long-term leave of absence cannot be a reasonable accommodation. As we noted in *Byrne*, "[n]ot working is not a means to perform the job's essential functions." 328 F.3d at 381. Simply put, an extended leave of absence does not give a disabled individual the means to work; it excuses his not working. Accordingly, we held in *Byrne* that "[a]n inability to do the job's essential tasks means that one is not 'qualified'; it does not mean that the employer must excuse the inability." *Id.*; *see also Waggoner v. Olin Corp.*, 169 F.3d 481, 482 (7th Cir. 1999) ("The rather common-sense idea is that if one is not able to be at work, one cannot be a qualified individual.").

*Byrne* leaves open the possibility that a brief period of leave to deal with a medical condition could be a reasonable accommodation in some circumstances. 328 F.3d at 381; *Haschmann v. Time Warner Entm't Co.*, 151 F.3d 591, 602 (7th Cir. 1998). For example, we noted that "[t]ime off may be an apt accommodation for intermittent conditions. Someone with arthritis or lupus may be able to do a given job even if, for brief periods, the inflammation is so painful that the person must stay home." *Byrne*, 328 F.3d at 381. Intermittent time off or a short leave of absence—say, a couple of days or even a couple of weeks—may, in appropriate circumstances, be analogous to a part-time or modified work schedule, two of the examples listed in § 12111(9). But a medical leave spanning multiple months does not permit the employee to perform the essential functions of his job. To the contrary, the "[i]nability to work for a multi-month period removes a person from the class protected by the ADA." *Id.*

Long-term medical leave is the domain of the FMLA, which entitles covered employees "to a total of 12 work-weeks of leave during any 12-month period … [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). The FMLA protects up to 12 weeks of medical leave, recognizing that employees will sometimes be *unable* to perform their job duties due to a serious health condition. In contrast, "the ADA applies only to those who can do the job." *Byrne*, 328 F.3d at 381.

The EEOC argues that a long-term medical leave of absence should qualify as a reasonable accommodation when the leave is (1) of a definite, time-limited duration; (2) requested in advance; and (3) likely to enable the employee to

perform the essential job functions when he returns. On this understanding, the duration of the leave is irrelevant as long as it is likely to enable the employee to do his job when he returns.

That reading of the statute equates "reasonable accommodation" with "effective accommodation," an interpretation that the Supreme Court has rejected:

> [I]n ordinary English the word "reasonable" does not mean "effective." It is the word "accommodation," not the word "reasonable," that conveys the need for effectiveness. An *ineffective* "modification" or "adjustment" will not *accommodate* a disabled individual's limitations. … Yet a demand for an effective accommodation could prove unreasonable … .

*U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 400 (2002). In other words, effectiveness is a necessary but not sufficient condition for a reasonable accommodation under the ADA.

Perhaps the more salient point is that on the EEOC's interpretation, the length of the leave does not matter. If, as the EEOC argues, employees are entitled to extended time off as a reasonable accommodation, the ADA is transformed into a medical-leave statute—in effect, an open-ended extension of the FMLA. That's an untenable interpretation of the term "reasonable accommodation."

Severson's other proposed accommodations require only brief discussion. He argues that Heartland could have transferred him to a vacant job or created a light-duty position for him. Reassignment to a vacant position may be a reasonable accommodation under the statute. *See*

§ 12111(9)(B). But it was Severson's burden to prove that
there were, in fact, vacant positions available at the time of
his termination. *Kotwica v. Rose Packing Co.*, 637 F.3d 744, 750
(7th Cir. 2011). Severson points to five vacant positions at
Heartland in the period *following* the termination of his
employment but none at the time he was fired.

Finally, an employer is not required to "create a new job
or strip a current job of its principal duties to accommodate a
disabled employee." *Gratzl v. Office of Chief Judges of 12th,
18th, 19th & 22nd Judicial Circuits*, 601 F.3d 674, 680 (7th Cir.
2010). Under EEOC guidance, "[a]n employer need not
create a light duty position for a non-occupationally injured
employee with a disability as a reasonable accommodation."
*EEOC Enforcement Guidance: Workers' Compensation & the
ADA*, 2 EEOC Compliance Manual (CCH) ¶ 6905, at 5394
(Sept. 3, 1996), 1996 WL 33161342, at *12. On the other hand,
if an employer has a policy of creating light-duty positions
for employees who are occupationally injured, then that
same benefit ordinarily must be extended to an employee
with a disability who is not occupationally injured unless the
company can show undue hardship. *Id.*

The question, then, is whether Heartland had a policy of
providing light-duty positions for employees who suffered
work-related injuries. It did not. In its Return to Work
manual, Heartland retained the option, in its discretion, to
give occupationally injured employees temporary duties on
an ad hoc basis if such work was available. These temporary
light-duty assignments were infrequent and generally lasted
no longer than two days; they were essentially acts of grace.
No evidence suggests that Heartland had a policy of crafting
light-duty positions for employees injured on the job. If an

employer "bends over backwards to accommodate a disabled worker … , it must not be punished for its generosity." *Vande Zande v. State of Wis. Dep't of Admin.*, 44 F.3d 538, 545 (7th Cir. 1995).

AFFIRMED.