NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued September 15, 2017
Decided October 17, 2017

**Before**

DANIEL A. MANION, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 17-1359

| | |
|---|---|
| Marytza Golden, | Appeal from the United States |
|     *Plaintiff-Appellant*, | District Court for the Southern |
| | District of Indiana, Indianapolis |
|     *v.* | Division. |
| Indianapolis Housing Agency, | No. 1:15-cv-00766 |
|     *Defendant-Appellee*. | |
| | Richard L. Young, |
| | *Judge*. |

**O R D E R**

Indianapolis Housing Agency police officer Marytza Golden was diagnosed with breast cancer in November 2014. After Golden took sixteen weeks of unpaid medical leave, her doctor still could not say when she would be able to return to work, so IHA terminated her. Golden sued, arguing that IHA violated the Americans with Disabilities Act (ADA) and the Rehabilitation Act by failing to accommodate her by granting six additional months of unpaid leave. The district court granted summary judgment to IHA. Because circuit precedent precludes Golden's claim, we affirm.

## I.   Background

Golden became an IHA police officer in June 1999. IHA officers are full-fledged police officers "whose main functions include responding to calls for service, investigating crimes, protecting the public, protecting IHA assets, responding to 911 calls, providing emergency aid, and protecting and serving the public." *Golden v. Indianapolis Hous. Agency*, No. 1:15-cv-766, 2017 WL 283481, at *1 (S.D. Ind. Jan. 23, 2017). Her position was federally funded within the meaning of Section 504 of the Rehabilitation Act.

In November 2014, after fifteen years on the job, Golden was diagnosed with breast cancer. She successfully requested leave under the Family and Medical Leave Act of 1993 (FMLA) on December 11. A week later, Golden underwent a right-side mastectomy and had five lymph nodes removed. On December 19, Golden's doctor described her condition as "ongoing" and her period of incapacity as "until released," which was unsurprising considering that Golden still had to go through chemotherapy and anticipated future surgeries.

Realizing that she wouldn't be able to return to work after her twelve weeks of FMLA leave, Golden applied for long-term disability benefits on March 13, 2015. On the application form, she represented that she "cannot perform [her] job descriptions safely" and "needed hands-on help to safely perform the activities of daily living." *Id.* at *2. Her direct supervisor certified on the application that her job could not be modified to accommodate her disability. Her application was approved on April 21.

Also on March 13, Golden received a letter from IHA human resources informing her that her FMLA leave would soon expire. The letter indicated that IHA custom permitted Golden to take an additional four weeks of unpaid medical leave even though her doctor had not indicated an end date for her treatment. Golden took the additional four weeks of leave and was thus required to return to work on April 14 or be automatically terminated. On March 31, her doctor returned an updated form that still listed the duration of her condition as "ongoing" and her period of incapacity as "until release."

On April 13 (the day before her leave was slated to end), Golden showed up unannounced at the IHA human resources office and had a meeting with HR director

Kathy Walden and generalist Richard Simmons. They discussed the March 13 letter as well as Golden's retirement and long-term disability benefits, but Golden didn't ask for additional leave or any other accommodations. However, after Golden left the office, she sent an after-hours email to Walden and Simmons explaining that she was "requesting an unpaid leave of absence per city policy." Walden interpreted Golden's request as pursuant to IHA's "General Leave of Absence (Unpaid Leave)" policy, which permits leave for a specified period of time (not to exceed six months) when no other form of leave is appropriate.[1] Walden rejected Golden's last-minute request for leave. Thus, Golden was effectively terminated on April 14, 2015. At that point, her doctor still had not provided an expected return-to-work date.

Golden then filed this suit alleging that IHA's actions violated the ADA and the Rehabilitation Act. She argued that federal law required IHA to accommodate her disability by providing her an additional six months of unpaid medical leave. She also argued that her termination was a *per se* violation of the Rehabilitation Act. The parties filed cross-motions for summary judgment, and the district court granted it to IHA and dismissed the case. Golden timely appealed.

## II.  Discussion

The Rehabilitation Act says that "[n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability ... be subjected to discrimination under any program or activity receiving Federal financial assistance ...." 29 U.S.C. § 794(a). The legal standards under the Rehabilitation Act and the ADA are identical. *Id.* § 794(d). So to prevail on a claim under either statute, Golden must be an "otherwise qualified individual," or someone "who, with or without reasonable accommodation, can perform the essential functions of the employment position that [she] holds or desires." 42 U.S.C. § 12111(8). This is true for both the failure-to-accommodate and the *per se* claims. *Kotwica v. Rose Packing Co.*, 637 F.3d 744, 747–48 (7th Cir. 2011) (failure to accommodate); *Steffen v. Donahoe*, 680 F.3d 738, 748 (7th Cir. 2012) (*per se*).

The "qualified individual" requirement is fatal to Golden's case. We recently reaffirmed that "[a]n employee who needs long-term medical leave *cannot* work and thus is not a 'qualified individual' under the ADA." *Severson v. Heartland Woodcraft, Inc.*,

---

[1] The policy also requires that employees give two weeks' notice before requesting such leave.

No. 15-3754, 2017 WL 4160849, at *1 (7th Cir. Sept. 20, 2017) (citing *Byrne v. Avon Prods., Inc.*, 328 F.3d 379, 381 (7th Cir. 2003)). We expressly declined to overrule *Byrne* and concluded that "A multimonth leave of absence is beyond the scope of a reasonable accommodation under the ADA." *Id. Severson* requires us to hold that a request for six months of medical leave in addition to the twelve weeks required by the FMLA removes an employee from the protected class under the ADA and the Rehabilitation Act. In short, because Golden is not a qualified individual, the district court correctly granted summary judgment to IHA.

## III.   Conclusion

While we sympathize with Golden's plight, clear circuit precedent controls this case. Under *Severson* and *Byrne*, an employee who requires a multi-month period of medical leave is not a qualified individual under the ADA or the Rehabilitation Act. Therefore, the judgment of the district court is AFFIRMED.

ROVNER, *Circuit Judge*, concurring. I agree that we are bound by the holdings in *Byrne v. Avon Prod., Inc.*, 328 F.3d 379 (7th Cir. 2003), and now *Severson v. Heartland Woodcraft, Inc.*, No. 15-3754, 2017 WL 4160849 (7th Cir. Sept. 20, 2017), which have declared—without any support from the text of the Americans with Disabilities Act—a per se rule that "a long term leave of absence cannot be a reasonable accommodation." *Severson*, 2017 WL 4160849 at *3. I question the holdings of these cases. The ADA, by its terms, is meant to be flexible and to require individualized assessments of both the reasonableness of an employee's requested accommodation and the burden on employers. Holding that a long term medical leave can never be part of a reasonable accommodation does not reflect the flexible and individual nature of the protections granted employees under the Act.

It is undisputed that the ADA allows for part-time or modified work schedules to accommodate individuals with disabilities. 42 U.S.C. § 12111(9). And so, for example, the ADA may require an employer with a flexible work force to offer part-time work or a work-when-you-can schedule to accommodate an employee undergoing chemotherapy who cannot work a full day every day during a course of treatment that may last many months. But our cases have declared a per se rule that would exclude an employee from seeking an accommodation in which the employee requires four full months off for chemotherapy treatment but then can return to work full time without restriction. This per se rule applies regardless of whether the leave would cause any hardship to the employer. The distinction is nonsensical.

This court and others have long interpreted the ADA's reasonable accommodation requirement as including paid or unpaid leave, subject to an employer's demonstration of undue hardship. *See, e.g.,* *Haschmann v. Time Warner Entm't Co.*, 151 F.3d 591, 601 (7th Cir. 1998) (stating that there was sufficient evidence from which a reasonable juror could conclude that the second medical leave of 2-4 weeks, as requested—following an earlier leave of three weeks and a modified schedule for three weeks—would have been a reasonable accommodation and was a question of fact for the jury). Other courts have rejected the per se rule that an extended medical leave can never be a reasonable accommodation under the ADA. *See, e.g,* *Garcia-Ayala v. Lederle Parenterals, Inc.*, 212 F.3d 638, 647-48 (1st Cir. 2000) (rejecting a per se rule that extended leaves cannot be reasonable accommodations and citing other cases that have held that a medical leave of absence is a reasonable accommodation under the Act in some circumstances). In fact both *Byrne* and *Severson* point out that under the ADA it may be appropriate to allow for intermittent short leaves of absence—a couple of days

or even a couple of weeks—for someone with a condition that at various times renders her completely unable to work, such as arthritis or lupus. *Severson*, 2017 WL 4160849 at

*3, *Byrne*, 328 F.3d at 381. But what sense does it make that the ADA could require an employer to accommodate an employee with lupus who requires one week leaves, several times a year, every year, but can never require an employer to accommodate an employee who needs a one-time leave of four or five months to recuperate from, for example, a kidney replacement? Whether an employer can reasonably accommodate an employee who requires a leave of either the first or second type is a factual determination that can be made in the latter case just as easily as in the former. It might be that a particular employer cannot and has not ever authorized a leave of more than a few weeks; but it might also be the case that the employer historically has permitted employees to take multi-month leaves for medical and non-medical reasons. There is no reason to think that the ADA was meant to accommodate one type of disability over another or that the fact-intensive assessments required to determine undue hardship can be applied to some forms of leave but not others.

The indefinite and lengthy nature of Golden's request for leave indeed may have been an undue hardship for the Housing Authority, but this was a determination to be made on the facts of the case. I continue to believe that a per se rule declaring that a long-term leave of absence can never be a reasonable accommodation under the ADA, as opposed to one requiring a factual determination of undue hardship, is contrary to the language of the Act. But because it is now the law of this circuit, I must concur in the judgment.