**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted September 17, 2020[*]
Decided September 18, 2020

*Before*

DAVID F. HAMILTON, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

No. 20-1773

| | |
|---|---|
| VICKEY D. DAVIDSON, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Western District of Wisconsin. |
| *v.* | No. 18-cv-1064-jdp |
| STATE COLLECTION SERVICE, INC., *Defendant-Appellee*. | James D. Peterson, *Chief Judge*. |

**O R D E R**

Vickey Davidson worked as a customer service representative for State Collection Service, Inc. until her employment ended shortly before a scheduled back surgery. Davidson sued her former employer for permitting a hostile work environment based on her race and unlawfully firing her because of her race and disability. The district court granted State Collection's motion for summary judgment

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

on all claims. Because no reasonable jury could find that Davidson's work environment was hostile, and she did not present evidence that State Collection unlawfully terminated her employment, we affirm.

In her two years working at State Collection, Davidson, who is Black, had several negative interactions with her coworker, and later, supervisor, Laura Thurow. In 2014, Thurow (then, a coworker) called Davidson "stupid," a comment Davidson reported to her supervisor. A year later, Thurow told Davidson that her (Thurow's) boyfriend is a member of the Hell's Angels motorcycle club and does not like Black people. This time, Davidson did not report Thurow's statement to her supervisor or the human resources department. Around October 2016, Thurow (who was, by then, Davidson's supervisor) asked Davidson if she wore a wig because, Thurow said, when Black women have new hairstyles and colors, it is not their real hair. Davidson did not report this statement to the human resources department, though she mentioned it to a former supervisor.

Davidson's employment with State Collection ended in November 2016, several days before she was scheduled for back surgery. The week before she was let go, Davidson informed one of State Collection's human resources representatives of the surgery, estimating that it would entail about four weeks of recovery time. The representative informed Davidson that, because she had already used her 12 weeks of leave under the Family and Medical Leave Act that year, she would need to resign and reapply for her position when she could work again. Davidson said that she would see if her surgery could be postponed until the next year.

The next week, Davidson missed two days of work without calling in; the representative left Davidson a voicemail explaining that, given their previous conversation, she considered the two unexcused absences a voluntary resignation without cause in accordance with State Collection's attendance policy. (It is undisputed that Davidson missed these two days and did not call in, and that doing so constituted a voluntary resignation under the company policy. But Davidson contends that Thurow told her that she did not need to call.) Davidson then left the representative a voicemail explaining that she did not wish to resign, but she never spoke with anyone at State Collection about returning to work. Several days later, the human resources department sent a letter confirming her resignation. The next day, Davidson's doctor faxed a letter to the human resources department stating that Davidson would be undergoing back surgery and her return-to-work status would be updated at her first post-operation appointment. Davidson's doctor ultimately cleared her to work on January 11, 2017.

Davidson sued State Collection, alleging that she had been subjected to a racially hostile work environment and was fired based on her disability and her race, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12112(a) and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. The district court entered summary judgment for State Collection on all claims. It determined that Davidson could not succeed on her disability discrimination claim because it was undisputed that she needed at least a month off work for surgery and therefore could not perform the essential functions of her job. The court also determined that no reasonable jury could find that three statements by one person over a two-year period constituted severe and pervasive racial harassment. Finally, the court entered summary judgment on the claim that State Collection fired Davidson because of her race, as neither party had addressed it, and nothing in the record supported the allegation.

On appeal, Davidson first contends that the district court erred by entering summary judgment on her hostile work environment claim. To succeed on this claim, Davidson needed to present evidence that "the harassment was so severe or pervasive that it altered the conditions of employment and created a hostile or abusive working environment." *Smith v. Ill. Dep't of Transp.*, 936 F.3d 554, 560 (7th Cir. 2019). Whether harassment reaches this level depends on "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Mendenhall v. Mueller Streamline Co.*, 419 F.3d 689, 691–92 (7th Cir. 2005) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).

Here, we agree with the district court that no reasonable jury could find that Thurow's handful of offensive comments during Davidson's two years of employment rose to the level of severe or pervasive harassment that altered her work environment. *See Poullard v. McDonald*, 829 F.3d 844, 859 (7th Cir. 2016); *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 431 (7th Cir. 1995) ("A handful of comments spread over months is unlikely to have so great an emotional impact as a concentrated or incessant barrage.") Davidson suggests that because State Collection has a "zero-tolerance" policy for discrimination, the conduct she alleged is enough to demonstrate liability. But, assuming that any of Thurow's remarks violated this company policy, violating workplace rules does not equate with violating federal law, which requires evidence that Thurow's behavior "altered the conditions of [Davidson's] employment and created a hostile or abusive working environment." *Smith*, 936 F.3d at 560. And though Davidson maintains that Thurow "applied a certain degree of intimidation" and subjected her to daily harassment, she did not submit evidence substantiating these statements in the district

court, and so we cannot consider them on appeal. *See Yasinskyy v. Holder*, 724 F.3d 983, 989 (7th Cir. 2013). Nor can we consider documents Davidson appended to her brief that were not properly submitted in the district court. *See* FED. R. APP. P. 10(e); *Carmody v. Bd. of Tr. of Univ. of Ill.*, 893 F.3d 397, 402 (7th Cir. 2018).

Davidson also contests the district court's entry of summary judgment on her claim under the Americans with Disabilities Act, but this claim also fails as a matter of law. An employer cannot discriminate against "a qualified individual" because of a disability. 42 U.S.C. § 12112(a). A "qualified individual" is someone able to perform, "with or without reasonable accommodation," the essential functions of her job. 42 U.S.C. § 12111(8). Davidson, however, could not perform the essential functions of her job when she required at least four weeks off of work. In *Severson v. Heartland Woodcraft, Inc.*, we explained that an employee who needed multiple months of medical leave after a scheduled back surgery could not perform the essential functions of his job and, therefore, could not be a qualified individual under the ADA. 872 F.3d 476, 481 (7th Cir. 2017). In doing so, we explicitly declined to abandon the principle articulated in *Byrne v. Avon Prods., Inc.*, 328 F.3d 379, 381 (7th Cir. 2003), that "[a] multimonth leave of absence is beyond the scope of a reasonable accommodation under the ADA." *Severson*, 872 F.3d at 479. Although Davidson argues that she could have returned to work sooner, and she quibbles with the district court's characterization of her need for an "indefinite" amount of leave, it is undisputed that she told the human resources representative that she expected to be absent for four weeks. Further, her doctor did not clear her to work until nearly two months after her surgery. This type of long-term medical leave is the domain of the Family and Medical Leave Act, but Davidson had used her allotted leave before this surgery. *See id* at 481. In contrast to the Family and Medical Leave Act, "the ADA applies only to those who can do the job," and Davidson could not do her job during a multi-month absence. *Id.* (quoting *Byrne*, 328 F.3d at 381).

Finally, Davidson argues that she should have been allowed to proceed on her claim that State Collection fired her because of her race, but she has not shown that the district court erred by entering summary judgment on this claim. Nothing in the record supports Davidson's contention that she was let go because of her race; there is no evidence backing her assertion that her involuntary resignation was based on anything but her unexcused absences leading up to her surgery.

AFFIRMED