**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with FED. R. APP. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted June 17, 2022[*]
Decided June 23, 2022

**Before**

MICHAEL Y. SCUDDER, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

CANDACE JACKSON-AKIWUMI, *Circuit Judge*

No. 21-2813

| | |
|---|---|
| SCOTT SCHNEIDER, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Western District of Wisconsin. |
| | |
| *v.* | No. 19-cv-202-wmc |
| | |
| HARMON SOLUTIONS GROUP, | William M. Conley, |
| LLC, et al., | *Judge*. |
| *Defendants-Appellees*. | |

**O R D E R**

Scott Schneider sued his former employer, Harmon Solutions Group, LLC, alleging that it violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101. Harmon offered him a desk that his doctor said would resolve his medical needs, but Schneider preferred a different accommodation. Later, after Schneider repeatedly

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

violated attendance rules and harassed a coworker, Harmon fired him. The district court entered summary judgment for Harmon, ruling that the evidence compelled the conclusion that Harmon reasonably accommodated Schneider's medical needs and lawfully fired him. Its reasoning was correct; thus, we affirm.

In reviewing the entry of summary judgment against Schneider, we recount the record in the light most favorable to him. *See Hackett v. City of South Bend*, 956 F.3d 504, 506 (7th Cir. 2020). Schneider raises two claims that arise from his time at Harmon, an insurance claims business, where he worked in the call center. His first claim is based on his health. Schneider has chronic fatigue syndrome, the pain and exhaustion from which prevent him from remaining seated at his cubicle for a full workday. Schneider began to stand during customer calls to help alleviate his symptoms, but a supervisor told him that, to protect customers' confidentiality, Harmon forbids employees from standing during calls, as the cubicle walls block sound only when callers are seated. In October 2017, Schneider requested a workplace accommodation that would allow him to stand during customer calls, and he provided a supporting doctor's note. That same day, Harmon granted the request. It relocated him to a standing desk behind a cluster of cubicles, away from other employees to maintain confidentiality. Schneider was dissatisfied. He felt that the desk isolated him from his colleagues, had poor lighting, and was presented to him as the only option. A few days later, Schneider furnished a new doctor's note rescinding the first note and stating that he did not require accommodations. His supervisor returned him to his original desk.

About two months later, Schneider renewed his standing-desk request with his new supervisor. The supervisor offered him a standing desk in a location different from the previous one. Schneider disliked this location because he believed that it too was isolating. He therefore sought a further change: a "floor coach" who would talk to him periodically to reduce his feelings of isolation. The supervisor disallowed that request but offered that Schneider could seek psychological help if he felt isolated. Without the floor coach, Schneider again declined the standing-desk option and instead asked for a different kind of chair. The supervisor denied that request because Schneider did not accompany it with a doctor's note, as Harmon's policy required.

The second issue concerns discipline that Schneider received for misconduct. In 2017, he was caught swearing and disparaging Harmon during customer calls. As a result, he received a warning for violating the company's standards of professionalism. He also received a warning about absenteeism after he incurred three unexcused absences and four tardies in under six months.

Schneider also had inappropriate contact with a coworker, prompting further discipline. Schneider was romantically interested in the coworker, and he tried to start a relationship with her in August 2017. They went out for drinks, and he told her that he wanted to kiss her on the cheek but would settle for a hug, which she declined. The next day at work, he told her that he "cried [himself] to sleep … for 40 minutes" after she rejected his hug and warned her that "you're just not getting the fact that there is such compatibility here you won't find in a lot of places." She responded: "I don't mean to hurt your feelings, but we [are] just friends and I personally have never dated any coworkers of mine, that can get complicated." Schneider used Harmon's instant-messaging system to ask her about pornography and prostitution (conduct that he later conceded was inappropriate), and she responded that she did not want to discuss those topics with him. The coworker brought these events to the attention of Harmon, which notified Schneider in September 2017 that he had again violated Harmon's policies about professionalism and further infractions could lead to discharge.

Despite this warning, Schneider's unwanted solicitation of the coworker continued until his discharge. In June 2018, he confronted her after his shift, ostensibly to apologize to her, and then he sent her flowers and Facebook messages, which she ignored. Unhappy with her silence, he pursued her on Harmon's instant-messaging system. She responded with a formal harassment complaint against Schneider. Four days later, Harmon fired Schneider, citing his continued harassment of the coworker despite his prior warnings about the need to maintain professionalism.

Schneider sued Harmon under the ADA, and after discovery, the case ended at summary judgment. As relevant to this appeal, Schneider alleged that Harmon failed to offer him a satisfactory accommodation for his chronic fatigue syndrome and that it fired him because of his disability. The district court ruled that no reasonable jury could find that Harmon failed to attempt to accommodate Schneider's disability or fired him for discriminatory reasons. The record, the court explained, showed that Harmon reasonably offered Schneider the standing desk that he requested, but Schneider declined it. Further, the court continued, Harmon reasonably declined Schneider's requests for a new chair and visits from a floor coach because he did not document a medical need for them, as Harmon's policy required. Finally, the court reasoned, Harmon supplied "compelling evidence" that Schneider's harassment of the coworker prompted and justified his discharge from the company.

On appeal, Schneider first contends that the court overlooked evidence and improperly drew inferences against him on his failure-to-accommodate claim. His claim should survive summary judgment, he argues, based on the evidence that the standing desk was isolated in an area with poor lighting and that, because Harmon denied his request for a new chair, it did not respond to his accommodation request in good faith.

To survive summary judgment on a failure-to-accommodate claim, Schneider needed to introduce evidence that: (1) he is a qualified individual with a disability, (2) his employer was aware of his disability, and (3) his employer failed to reasonably accommodate his disability. *James v. Hyatt Regency Chicago*, 707 F.3d 775, 782 (7th Cir. 2013). A "reasonable accommodation" is one that allows the employee to perform the position's essential functions. *Severson v. Heartland Woodcraft, Inc.*, 872 F.3d 476, 481 (7th Cir. 2017); *see* 42 U.S.C. § 12111(9).

Schneider has not supplied evidence of the third element—that Harmon's efforts to accommodate his condition were unreasonable. Undisputed evidence shows that Harmon offered him a standing desk—the exact accommodation he requested—on the same day that he made the request. True, Schneider did not care for this particular desk because of its location and lighting. But he did not furnish credible medical or other evidence that the desk's location—which fulfilled Harmon's uncontested policy of maintaining customer confidentiality—or its lighting materially impaired his ability to handle customers' calls satisfactorily. *See Severson*, 872 F.3d at 481. And the ADA does not obligate Harmon to accommodate Schneider's mere personal preferences, so long as its proposed option is reasonable, as it was. *See Hoppe v. Lewis University*, 692 F.3d 833, 840 (7th Cir. 2012). Finally, although Harmon denied Schneider's requests for a new chair and visits from a floor coach, it did so reasonably. The supervisor followed Harmon's policy (also unchallenged) that required a doctor's note alongside each accommodation request, and Schneider never provided one.

Schneider responds that Harmon's failure to accommodate him reasonably can be inferred from its refusal to engage in the "interactive process" under which the employer and employee work together on exploring an accommodation. *See* 29 C.F.R. § 1630.2(o)(3). But the record unmistakably shows that supervisors reasonably worked with Schneider to accommodate each request that his doctor made. *See Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1061–62 (7th Cir. 2014). When Schneider first declined the standing desk that Harmon supplied in order to satisfy his doctor, he furnished a second doctor's note rescinding the accommodation request, and he was returned to his previous desk. Because his doctor cleared him to work without restrictions in the

second note, he cannot credibly claim that Harmon failed to try to accommodate him. *See Hooper v. Proctor Health Care Inc.*, 804 F.3d 846, 852 (7th Cir. 2015).

Finally, Schneider contests the entry of summary judgment on his claim that he was fired because of his disability, but he has not furnished evidence that his chronic fatigue syndrome was a "but for" cause of his discharge. *See Monroe v. Ind. Dep't of Transp.*, 871 F.3d 495, 503–04 (7th Cir. 2017); 42 U.S.C. § 12112(a). It is undisputed that Schneider violated Harmon's professionalism policies (by swearing, disparaging the company to customers, and soliciting a coworker) and its absenteeism rules. Moreover, once Harmon warned him that he could be fired for unprofessionally pursuing a coworker, he sent more unsolicited messages to that coworker. Schneider has not countered this record with evidence—such as examples of non-disabled workers with comparable records of misconduct whom Harmon did not fire—that might reasonably suggest that his disability prompted his discharge. Therefore, the district court rightly entered summary judgment on the discharge claim.

We address one remaining matter. Although they are named defendants, Nicole Darby and Vanessa Bluem are not proper parties to this appeal, and we have removed them from the caption. The district court permitted Schneider to proceed against Darby (an operations manager at Harmon) and Bluem (Schneider's former supervisor) only on claims under the Family and Medical Leave Act. *See* 29 U.S.C. § 2601. But Schneider withdrew these claims in his response to the motion for summary judgment, and he does not address the FMLA on appeal. He therefore has waived any argument related to the FMLA claims against Darby and Bluem. *See Rahn v. Board of Trustees of N. Ill. University*, 803 F.3d 285, 290–91 (7th Cir. 2015).

AFFIRMED