# Illinois Official Reports

## Appellate Court

---

### *Fox v. Adams & Associates, Inc.*, 2020 IL App (1st) 182470

---

| | |
|---|---|
| Appellate Court Caption | CARLA FOX, Plaintiff-Appellant, v. ADAMS AND ASSOCIATES, INC., and CHRISTINE SANCHEZ, Defendants-Appellees. |
| District & No. | First District, Fourth Division<br>No. 1-18-2470 |
| Filed | February 6, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 16-L-7730; the Hon. Brigid Mary McGrath, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | William M. Walsh, of Law Office of William M. Walsh, LLC, of Chicago, for appellant.<br><br>Elizabeth M. Bartolucci and Kristine S. Phillips, of O'Hagan Meyer LLC, of Chicago, for appellees. |
| Panel | JUSTICE LAMPKIN delivered the judgment of the court, with opinion.<br>Justices Reyes and Burke concurred in the judgment and opinion. |

**OPINION**

¶ 1 Plaintiff, Carla Fox, filed a complaint against defendants, her former employer Adams and Associates, Inc. (Adams Inc.), and its corporate officer, Christine Sanchez, alleging disability discrimination under the Americans with Disabilities Act of 1990 (ADA) (42 U.S.C. § 12101 *et seq.* (2012)) and the Illinois Human Rights Act (Rights Act) (775 ILCS 5/1-101 *et seq.* (West 2016)) and claims of retaliatory discharge and tortious interference with employment expectancy. The trial court granted summary judgment in favor of defendants, finding that (1) Fox was not a qualified individual with a disability and (2) there was no genuine issue of fact that (a) Fox could not perform the functions of the job due to her disability, (b) Adams Inc. terminated her employment due to her medical inability to work, and (c) Adams Inc.'s corporate officer did not act with malice and without justification to secure the termination of Fox's employment.

¶ 2 On appeal, Fox argues that (1) she was a qualified individual with a disability because her request for a multi-month leave of absence was not *per se* unreasonable, (2) she did not request an indefinite amount of time for her leave of absence, (3) a genuine issue of material fact exists regarding whether defendants' adverse actions were based on Fox's exercise of workers' compensation benefits, and (4) the evidence showed that Sanchez acted in a malicious or unjustified manner to secure the termination of Fox's employment.

¶ 3 For the reasons that follow, we affirm the judgment of the circuit court.[1]

¶ 4 **I. BACKGROUND**

¶ 5 According to the pleadings and depositions filed in this matter, Adams Inc. contracted with the United States Department of Labor to provide education and vocational training services to disadvantaged young adults at facilities throughout the country. Each facility had a wellness department that provided health-related services to students. Fox was a manager of the wellness department at the Joliet, Illinois, facility from 2003 until she was fired on January 20, 2015. Prior to her termination, her job duties involved overseeing the day-to-day operations of the wellness department and supervising the physicians, dentists, nurses, mental health professionals, and other staff who provided the services. Fox was required to have an active registered-nurse license and knowledge of the Department of Labor's and Adams Inc.'s policies and procedures. To competently perform her job duties, Fox needed to be able to focus and concentrate when carrying out required tasks; understand and recall important details, including student medication procedures; employ sound judgment, time management, and delegation skills; effectively articulate thoughts and ideas; and identify problems, analyze causes, and evaluate appropriate solutions prior to taking or recommending action.

¶ 6 There were always at least 200 students at the Joliet facility. Before students arrived at the facility, staff created a file to assess their wellness needs. Many students required daily care, which was administered by the wellness department. As a licensed registered nurse, Fox was responsible for overseeing the staff who administered medication to the students and was

---

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

required to comply with local and federal guidelines for administering medication and maintaining medical records.

¶ 7    At all relevant times, Fox reported to her direct supervisor, Anneice Owens, who was the facility's director of finance and administration. Owens reported to defendant Sanchez, who was the facility's director. Adams Inc. granted Fox several accommodations prior to the events at issue in this appeal, including (1) a handicap parking space in May 2000, (2) a 3-month leave of absence for a disability in April 2011, (3) a 2½ -month leave of absence for a medical condition, starting in July 2011, and (4) a 1-year intermittent leave of absence, starting in April 2012.

¶ 8    On October 31, 2013, Fox suffered a work-related injury in an automobile collision and went on a workers' compensation leave of absence. She received a three month leave of absence and returned to work on March 3, 2014, working half-days pursuant to her doctor's restriction. During her leave, Adams Inc. implemented a policy change that no longer allowed employees to skip their lunch hour and leave work one hour early. On March 20, 2014, Fox sent an e-mail to the Adams Inc. human resources manager confirming that Fox had been notified while she was on leave that Adams Inc. was no longer able to accommodate her taking her lunch hour at 3 p.m., before the end of her shift at 4 p.m. This change interfered with Fox's ability to timely arrive at her college courses. On March 27, 2014, Adams Inc. sent Fox a letter informing her that as of April 11, 2014, it would no longer be able to accommodate her half-day work restriction. Thereafter, Fox was involved in two disciplinary actions that resulted in formal written warnings by Adams Inc.

¶ 9    Regarding the first action, a group of students and their parents complained to Adams Inc.'s regional office about an incident that occurred on Saturday, April 19, 2014. Sanchez spoke with the students the following Monday and learned that Fox had told the students, some of whom were under 18 years of age, that they were going to the wedding of the pastor of the church Fox attended and Fox wanted them to partake in and enjoy the event. When the students arrived, Fox directed them to set up tables and chairs and prepare and serve food for the wedding guests. The students were left unsupervised for several hours during the event. They were not trained in culinary arts, and one student was burned by a hot dish. Fox did not allow the students to eat until after all the wedding guests had eaten, and by then the little food that remained was cold. Moreover, in violation of the facility's policy, the students were driven back to the facility in private vehicles. The students told Sanchez they felt that Fox had used them for unpaid labor. The students also complained to Owens about the incident.

¶ 10    Fox told Sanchez that the wedding was "community service" for the students, and Fox did not see any error in her conduct. Sanchez, however, believed that Fox's conduct was egregious, particularly because some of the students were underprivileged minors and Fox took advantage of them as free labor for the benefit of her friend.

¶ 11    Adams Inc. investigated the incident and concluded that (1) Fox's use of the students for her friend's wedding was improper and (2) Fox had violated Adams Inc.'s safety policies by failing to ensure that the students were supervised and transported using the facility's vehicles. Although this was a terminable offense, Sanchez and Owens exercised their discretion and instead issued an April 30, 2014, formal written warning to Fox for her improper use of student resources. The warning stated that Fox's failure to perform satisfactorily as delineated in this warning would result in further disciplinary action up to and including recommendation of a termination review of her employment.

¶ 12    Regarding the second disciplinary action, Sanchez was informed on May 1, 2014, that Fox had failed to arrange accommodations and safety precautions for a new student with significant disabilities, *i.e.*, he had a prosthetic leg, one of his arms was significantly shorter than the other, and he used a colostomy bag. Specifically, Fox had failed to convey this necessary information to certain staff members and actively manage or follow-up on the needs of the student, who had begun two trade classes that required heavy lifting, which was potentially dangerous to him and his classmates. Fox asserted that the student should not have been treated as a disabled child because he did not "consider himself disabled." Fox also asserted that Sanchez should have been aware of the student's visibly obvious disabilities and probably had been informed of them during certain meetings, which Fox admittedly did not attend.

¶ 13    Adams Inc. investigated this incident and determined that Fox failed to ensure that proper precautions were in place and to communicate the student's disabilities to other facility personnel before the student arrived at the facility. Moreover, Fox should have provided this information to personnel despite the obviousness of the student's disabilities and regardless of whether he believed himself to be disabled. Adams Inc. concluded that Fox's duty as the wellness manager required her to prepare the student for the campus and then manage his wellness once he was admitted. As a result of this incident, on May 2, 2014, Adams Inc. issued Fox a final written warning, which stated that Fox's failure to perform satisfactorily as delineated in this warning would result in further disciplinary action up to and including recommendation of a termination review of her employment.

¶ 14    Fox was granted an intermittent leave of absence to receive physical therapy. This leave started June 6, 2014, and spanned a seven-month period.

¶ 15    On October 24, 2014, Fox submitted to Adams Inc. an internal written complaint against Sanchez. Fox's complaint primarily concerned a verbal disagreement between her and Sanchez on October 22, 2014, about whether a certain student could remain at the facility pursuant to the rules of the Department of Labor. Fox alleged that Sanchez had yelled at her during that verbal disagreement. Fox also alleged that Sanchez continually harassed her after her leave of absence ended in March 2014 with disrespectful and intimidating behavior, including instructing human resources to issue the April and May 2014 written warnings.

¶ 16    Meanwhile, on November 4, 2014, Owens placed Fox on a corrective action plan due to numerous itemized job performance concerns that primarily involved Fox's delegation of work to her staff and follow up with them. The corrective action plan required Fox to address and correct her job performance in the itemized areas.

¶ 17    On November 10, 2014, Walter Carino, Adams Inc.'s corporate human resources manager, issued written conclusions of his investigation of Fox's internal complaint. Carino had obtained statements from Fox, Sanchez, and two witnesses who had overheard the October 2014 verbal disagreement. Although the two witnesses heard both Fox and Sanchez raise their voices during the incident, the two witnesses did not hear the content of that conversation. Those witnesses did not corroborate Fox's claim of harassment by Sanchez but did characterize Sanchez as being "passionate" about her job. Carino found that Sanchez did raise her voice but did not yell at Fox during the verbal dispute that arose from their valid differences of opinion regarding an interpretation of the Department of Labor's rules, although Fox's interpretation of the rules was correct. Carino also found that the April and May 2014 written reprimands issued to Fox were appropriate and did not believe that there had been a pattern of harassment directed toward Fox. Carino believed that employee descriptions of Sanchez's general

- 4 -

demeanor as being "passionate" about the facility's work really meant that she was "quick to anger." Carino recommended that the management of Adams Inc. coach Sanchez to use a more balanced and calmer approach to employee relations and consider outside courses regarding anger management or dealing with difficult employees.

¶ 18    On November 24, 2014, Dr. Nadkarni of the Center for Neurological Diseases S.C. wrote a note stating that he had seen Fox that day and she was "to stay off of work until her follow up visit December 22, 2014." On November 26, 2014, Dr. Anik Amin of University Neurologists wrote a letter stating that Fox had commenced treatment for temporal lobe epilepsy and Fox stated that her symptoms started after an October 2013 car accident. Dr. Amin stated that this condition impairs concentration and cognition, which could affect work performance, and Fox needed to be excused from work for 30 days while the treatment takes effect.

¶ 19    On November 26, 2014, Adams Inc. sent Fox a letter regarding her request for a continuous leave of absence to December 23, 2014, under the Family and Medical Leave Act of 1993 (FMLA) (29 U.S.C. § 2601 et seq. (2012)). Adams Inc. explained the insurer had determined that Fox was not eligible for FMLA leave because she did not meet the requisite minimum number of hours worked in the last 12 month period. Moreover, Fox did not have sufficient vacation or sick time to cover the leave she requested. Accordingly, Adams Inc. proceeded with Fox's request under the ADA and asked her to complete and return the enclosed ADA documents.

¶ 20    On December 17, 2014, Fox requested a leave of absence as an accommodation for her recently diagnosed condition of temporal lobe epilepsy. Fox stated that her limitations included an inability to "concentrate consistently or remember important details." She also stated that she was unable to drive and perform any job duties that required "concentrating consistently and remembering details."

¶ 21    Upon receipt of Fox's request under the ADA, defendants engaged in an interactive process to discuss a reasonable accommodation. Accordingly, Fox's physician, Dr. Amin, provided additional information about Fox's limitations, including loss of awareness and memory impairment due to temporal lobe epilepsy. He estimated the duration of Fox's impairment would be "at least 3 months to indefinite." Dr. Amin opined that Fox's impairment prevented her from performing her job duties because she could not "concentrate consistently" and "remember important details" and she could not currently perform the essential functions of her job "until [the epileptic] spells are under better control." Dr. Amin opined that Fox was currently limited from "performing tasks requiring high mental concentration or remembering multiple things," and he expected that Fox would be fully released to return to work without restrictions "[h]opefully in 3 months (uncertain)."

¶ 22    When Sanchez consulted Fox about her request, Fox stated that her limitations—multiple seizures, occasional lack of recollection, memory loss, and limited concentration—prevented her from performing anything related to her job duties. Fox also stated that Adams Inc. could not currently help her until she was reevaluated by her physician, which might occur in March 2015. Fox did not know how long she would need assistance.

¶ 23    Then Sanchez consulted separately with Owens and human resources manager Charrice Miller about the effect of Fox's requested accommodation on the wellness department and the performance of the wellness department manager's duties.

¶ 24    Owens stated that Fox's requested accommodation would prevent the licensed practical nurses from performing their required duties under the direct supervision of a wellness manager and no coverage was available for Fox because no other staff member had the requisite license and credentials. Although a temporary employee could fill in for Fox, it would burden the overall management of the department because a temporary employee lacked knowledge of Department of Labor policies and procedures. Moreover, a lack of continuity of care could adversely affect the quality of care rendered to the students. Also, Fox's request would interfere with the department's ability to operate the site and provide services to students because they would have to go off site for wellness concerns, which would incur costs. Finally, an alternative accommodation for Fox was not available because she would not be reevaluated by her physician until March 2015 and there was no projected date for when she would be released back to work.

¶ 25    Miller stated that Adams Inc. could not currently help Fox because she needed a physician's reevaluation in March 2015 and her staff could not perform their required duties without supervision. Moreover, the training issues and costs involved in hiring a temporary employee to cover Fox's position were too burdensome due to the necessity of compliance with the Department of Labor's requirements. Finally, no alternative accommodation would still meet Fox's needs without causing too much disruption to the department.

¶ 26    Sanchez recommended to corporate human resources that Fox's request could not be accommodated. Sanchez cited the same concerns raised by Owens and Miller to support this recommendation. Thereafter, Adams Inc.'s corporate human resources director and in-house counsel approved the denial recommendation.

¶ 27    On December 24, 2014, Adams Inc. sent Fox a letter denying her accommodation request due to her cognitive limitations for a leave of absence with an expected duration of a minimum of three months to indefinitely. Adams Inc. noted that Fox's conditions and restrictions prevented her from being able to perform the essential functions of her job either with or without reasonable accommodation and no alternate positions were available due to her restrictions and the minimum three-month duration and indefinite nature of her requested leave. Adams Inc. concluded that Fox's request would create an undue hardship on the facility because the nature and cost of the accommodation would be exorbitant, the job responsibilities of a wellness manager were difficult to cover on a temporary leave basis, the facility had limited financial resources available, and Fox's requested accommodation would negatively impact and disrupt the structure and function of the remaining workforce and pose a risk to the health and welfare of the student population.

¶ 28    On January 6, 2015, Dr. Amin wrote a letter stating that Fox's condition restricted her ability to work because the condition "causes lapses in concentration/memory/awareness that can be detrimental to her as well as others around her at work. It interferes with her ability to provide patient care." Dr. Amin stated that Fox's symptoms were still present but improving under her treatment regimen, which was actively being adjusted. Fox's next appointment with Dr. Amin was in early February, and he was actively adjusting treatment based on weekly telephone conversations with Fox.

¶ 29    On or about January 9, 2015, Sanchez, Owens, and Miller recommended that Fox's employment be terminated because Adams Inc. could not accommodate her leave request. Adams Inc. terminated Fox's employment on January 20, 2015.

¶ 30     In August 2016, Fox filed a complaint against Adams Inc. and Sanchez, alleging disability discrimination under the ADA and the Rights Act and claims of retaliatory discharge and tortious interference with employment expectancy.

¶ 31     In July 2018, defendants moved the court for summary judgment on all of Fox's claims. Defendants argued that (1) Fox did not qualify as a disabled individual under the ADA and the Rights Act because she sought only a three-month to an indefinite leave of absence as an accommodation and could not perform her essential job functions with or without a reasonable accommodation, (2) Fox could not support her retaliatory discharge claim by showing causation between her discharge and her workers' compensation claim and leave of absence request because her physician's statements regarding her condition established that she was unable to perform the essential functions of her job, and (3) Fox could not support her tortious interference claim by showing that Sanchez acted maliciously and without justification to terminate Fox's employment. In support of their summary judgment motion, defendants included the depositions of Owens, Sanchez, Fox, Carino, and Miller and documents related to Fox's employment at Adams Inc. and her leave of absence requests.

¶ 32     In her deposition, Owens testified that she initially had a good opinion of Fox's job performance but thought that her performance declined over time. Owens explained that major and minor "things" were being missed or not completed. Also, Fox became more overwhelmed in her job, and staff complained that she failed to explain "certain things" even though Fox believed she had given them instructions. Fox told Owens about issues Fox was having with her memory, and Owens knew that Fox was ill. When Owens thought that Fox's performance was below average, she gave Fox a corrective action plan in November 2014. Owens characterized many of the itemized deficiencies listed in that plan as easily correctable matters that could result in large consequences. Owens had no doubt that Fox would be able to comply with the corrective action plan, which played no role in the decision to terminate her employment.

¶ 33     In her deposition, Sanchez testified that Owens supervised Fox but Sanchez interacted frequently with Fox due to scheduled manager meetings. If Fox received a low score on a performance evaluation, then Owens needed to work with Fox to ensure that her scores improved. Sanchez explained that when a staff member went on leave under workers' compensation, FMLA, etc., the matter was completely handled by human resources and Sanchez was not involved in any way. When a staff member returned from such leave, Sanchez was informed if anything needed to be done to accommodate that person. Sanchez never reviewed doctor's notes regarding employees; she would not be informed of the reason for an employee's leave request—only the amount of days of leave requested. Decisions on accommodation requests were made by human resources, but Sanchez did participate in the decision-making process.

¶ 34     Sanchez testified that when she spoke to Fox by telephone on December 22, 2014, regarding her ADA accommodation request, Fox stated, *inter alia*, that she could not perform any of her job duties because she experienced multiple seizures, she lacked the ability to concentrate, her memory was at an all-time low, and she could not remember the functions of her job. Sanchez agreed with the December 2014 recommendations of Owens and Miller to terminate Fox's employment because Adams Inc. could not accommodate Fox's leave request. Fox was not terminated based on her use of workers' compensation benefits, either of the April and May 2014 incidents that resulted in written warnings, Fox's October 2014 internal

complaint against Sanchez, or Fox's November 2014 corrective action plan. Sanchez also denied ever treating Fox in a demeaning or intimidating manner.

¶ 35 In her opposition to defendants' summary judgment motion, Fox argued the record evidence, when construed liberally in her favor, was more than sufficient to permit a reasonable jury to find that (1) her estimated three-month leave request was a reasonable accommodation, (2) defendants fired her in retaliation for her workers' compensation leave of absence, and (3) Sanchez's efforts to secure Fox's termination were malicious. To support her arguments, Fox submitted her signed August 6, 2018, declaration, stating that shortly after her doctor released her from her medical leave of absence to return to work half-days in March 2014, Keith Henderson, the human resources manager at the time, told her that Adams Inc. had tried to find a reason to fire her but was unable to do so because it did not "have anything" on her. Fox also cited a portion of her deposition testimony, where, according to Fox, Adams Inc. employee Morgan Lindsey told Fox that management told Lindsey to watch Fox and report any misconduct. Moreover, Lindsey told Fox that Sanchez had urged Lindsey to blame Fox for failing to train Lindsey properly and for the loss of $7000 worth of medicine. Fox argued that Henderson's and Lindsey's statements were admissible as statements by a party opponent under Illinois Rule of Evidence 801(d)(2)(D) (eff. Oct. 15, 2015) because the statements were offered against defendants and were statements by their agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship.

¶ 36 On October 31, 2018, the trial court granted summary judgment in favor of defendants. The court found that (1) Fox was not a qualified disabled person under the ADA and the Rights Act because there was no genuine issue of material fact that she was not able to perform the essential functions of her job at the time of her discharge, (2) Fox failed to meet her burden under her retaliatory discharge claim to make a *prima facie* showing that a genuine issue of material fact existed regarding whether defendant Sanchez acted maliciously or without justification, and (3) Fox failed to meet her burden under her tortious interference with employment claim to make a *prima facie* showing that a genuine issue of material fact existed regarding whether defendants' intentional and unjustified interference caused the termination of Fox's reasonable expectancy of entering into a valid business relationship.

¶ 37 Fox timely appealed.

¶ 38                                II. ANALYSIS

¶ 39 Summary judgment is a drastic means of disposing of litigation and should be entered only when the right of the moving party is clear and free from doubt. *Gilbert v. Sycamore Municipal Hospital*, 156 Ill. 2d 511, 518 (1993). A defendant moving for summary judgment may meet the initial burden of production by either affirmatively showing that some element of the case must be resolved in defendant's favor or by showing the absence of evidence supporting the plaintiff's position on one or more elements of the cause of action. *Hutchcraft v. Independent Mechanical Industries, Inc.*, 312 Ill. App. 3d 351, 355 (2000). The plaintiff is not required to prove his case at the summary judgment stage; in order to survive a motion for summary judgment, he must present a factual basis that would arguably entitle him to a judgment. *Robidoux v. Oliphant*, 201 Ill. 2d 324, 335 (2002).

¶ 40 Summary judgment is only appropriate "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-

1005(c) (West 2016). The court must construe these documents and exhibits strictly against the moving party and liberally in favor of the nonmoving party. *Home Insurance Co. v. Cincinnati Insurance Co.*, 213 Ill. 2d 307, 315 (2004). The court may draw reasonable inferences from the undisputed facts, but where reasonable persons could draw divergent inferences from the undisputed facts, the issue should be decided by a trier of fact and the motion for summary judgment denied. *Siegel v. Village of Wilmette*, 324 Ill. App. 3d 903, 907 (2001); *Loyola Academy v. S&S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 272 (1992). We review a trial court's grant of summary judgment *de novo*. *Home Insurance Co.*, 213 Ill. 2d at 315. That is, we perform the same analysis as a trial court and may make our decision on any basis in the record, regardless of whether the trial court relied on that basis. *Guterman Partners Energy, LLC v. Bridgeview Bank Group*, 2018 IL App (1st) 172196, ¶¶ 48-49.

¶ 41                              A. Disability Discrimination

¶ 42    Fox alleged defendants discriminated against her in violation of the ADA and the Rights Act. The ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to" the discharge of employees. 42 U.S.C. § 12112(a) (2012). To withstand summary judgment on her ADA claim, Fox must show a sufficient factual basis that would arguably prove that (1) she is disabled, (2) she is otherwise qualified to perform the essential functions of the job with or without reasonable accommodation, and (3) the adverse job action was caused by her disability. See *Roberts v. City of Chicago*, 817 F.3d 561, 565 (7th Cir. 2016). A qualified individual is someone who, with or without reasonable accommodation, can perform the essential functions of the employment position she holds. 42 U.S.C. § 12111(8) (2012).

¶ 43    Similarly, the Rights Act prohibits discrimination in employment against individuals with physical or mental disabilities. 775 ILCS 5/1-101 *et seq.* (West 2016); *Van Campen v. International Business Machines Corp.*, 326 Ill. App. 3d 963, 970 (2001). To withstand summary judgment of her Rights Act claim, Fox must show a sufficient factual basis that would arguably prove that (1) she has a disability as defined in the Rights Act, (2) an adverse job action was taken against her because of the disability, and (3) her disability is unrelated to her ability to perform the functions of her job. See *Van Campen*, 326 Ill. App. 3d at 971. "Disability" is defined under the Rights Act as "a determinable physical or mental characteristic of a person *** which may result from disease, injury, congenital condition of birth or functional disorder and which characteristic *** is unrelated to the person's ability to perform the duties of a particular job or position." 775 ILCS 5/1-103(I)(1) (West 2016). A plaintiff must have the ability to perform the duties of the job in question; a plaintiff who cannot, by reason of a physical condition, perform the duties of the job in question even with accommodation is not disabled under the Rights Act. See *Van Campen*, 326 Ill. App. 3d at 971.

¶ 44    The parties agree that consistent concentration and the ability to remember important details were essential functions of Fox's job, and both Fox and her physician clearly stated that Fox was not able to perform those essential functions when she was discharged. Fox argues, however, that her requested leave of absence was a reasonable accommodation that would have enabled her to perform her essential job duties *after* her physician fully released her to return to work without restrictions, "hopefully" in three months, although this estimate of the duration of Fox's impairment was "uncertain." Defendants respond that Fox was neither a qualified individual under the ADA nor disabled under the Rights Act because granting her a leave of

absence for an indefinite time period that would have been a minimum of three months in no way enabled her to presently perform her job.

¶ 45    According to the ADA, discrimination includes an employer "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an *** employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of" its business. 42 U.S.C. § 12112(b)(5)(A) (2012). The ADA also says a "reasonable accommodation" may include, *inter alia*, "job restructuring, part-time or modified work schedules, [or] reassignment to a vacant position." 42 U.S.C. § 12111(9)(B) (2012). When interpreting a federal statute, Illinois courts must look to the decisions of the United States Supreme Court and lower federal courts. *State Bank of Cherry v. CGB Enterprises, Inc.*, 2013 IL 113836, ¶ 33. If the United States Supreme Court has decided the issue, its decision is binding and conclusive. *Id.* In the absence of a United States Supreme Court decision on the issue, Illinois courts give weight "to federal circuit and district court interpretations of federal law depend[ing] on factors such as uniformity of law and the soundness of the decisions." *Id.*

¶ 46    Once the plaintiff employee shows that an accommodation "seems reasonable on its face, *i.e.*, ordinarily or in the run of cases," then the defendant employer "must show special (typically case-specific) circumstances that demonstrate undue hardship in the particular circumstances." *US Airways, Inc. v. Barnett*, 535 U.S. 391, 401-02 (2002). The "reasonable accommodation" concept is flexible "[b]ut the baseline requirement found in the definition of 'qualified individual' is concrete: A 'reasonable accommodation' is one that allows the disabled employee to 'perform the essential functions of the employment position.' " *Severson v. Heartland Woodcraft, Inc.*, 872 F.3d 476, 481 (7th Cir. 2017) (quoting 42 U.S.C. § 12111(8) (2012)); see also *Byrne v. Avon Products, Inc.*, 328 F.3d 379, 381 (7th Cir. 2003) ("[n]ot working is not a means to perform the job's essential functions"); *Waggoner v. Olin Corp.*, 169 F.3d 481, 482 (7th Cir. 1999) ("The rather common-sense idea is that if one is not able to be at work, one cannot be a qualified individual.").

¶ 47    In *Severson*, a Seventh Circuit case, the plaintiff suffered from serious back pain. 872 F.3d at 478. In June 2013, he took a 12-week FMLA leave; on the last day of that leave, however, he had back surgery, which required him to remain off work for another two or three months. Severson asked to continue his leave, but the company denied his request and terminated his employment, while inviting him to reapply. Severson's work restrictions were lifted approximately three months later, though he did not reapply; instead, he filed a claim that his employer violated the ADA by failing to provide him a reasonable accommodation. *Id.*

¶ 48    The district court granted the employer's motion for summary judgment, and the Seventh Circuit affirmed, explaining that "[t]he ADA is an antidiscrimination statute, not a medical-leave entitlement." *Id.* at 479. Moreover, because the statute is limited to a "qualified individual," the court reasoned that "the term 'reasonable accommodation' is expressly limited to those measures that will enable the employee to work." *Id.* at 479, 481. Since "[a]n employee who needs long-term medical leave *cannot* work," the court explained such an employee "is not a 'qualified individual' under the ADA." (Emphasis in original.) *Id.* In so holding, the court specifically rejected the proposition of an "extended" leave as a "reasonable accommodation" under the ADA. *Id.* at 482.

¶ 49    Nevertheless, the Seventh Circuit acknowledged that the inquiry of whether an accommodation is reasonable is a fact-specific question and it is possible that a brief period of

leave to deal with a medical condition could be a reasonable accommodation in some circumstances. *Id.* at 481 (citing *Byrne*, 328 F.3d at 381, which noted that someone with an intermittent condition like arthritis or lupus might be able to do a particular job even if, for brief periods, the inflammation was so painful that the person must stay home). The court, however, expressly held that "a medical leave spanning multiple months does not permit the employee to perform the essential functions of his job." *Id.*

¶ 50    Here, the undisputed facts demonstrate that Fox was not able to return to work in *any* capacity for a minimum of three months and, even then, there was no indication as of January 20, 2015, the date of her termination, whether she would be capable of full-time work or anything approximating it because Fox stated that her physician would not reevaluate her condition until sometime in March 2015, and her physician stated on January 6, 2015, that he was actively adjusting her treatment regimen and her next appointment with him was in early February. In other words, at the time that her employment was terminated, she was not capable of working *at all* and would have needed an additional leave of perhaps two more months before she would be assessed to even determine whether she would be able to return to work, after having exhausted her eligibility for FMLA. Because Fox's need for such an extended medical leave did not permit her to perform the essential functions of her job, she was not a qualified individual at the time of her termination; instead, she falls outside of the protections of the ADA. See *id.*; *Wilson v. Greenco Industries, Inc.*, No. 17-CV-934-WMC, 2019 WL 1084783, at *7-8 (W.D. Wis. Mar. 7, 2019) (applying precedent in *Severson* and *Byrne* to grant summary judgment to employer, holding that an employee who required a multi-month period of medical leave is not a qualified individual under the ADA).

¶ 51    Fox urges this court not to follow *Severson*, arguing that this Seventh Circuit opinion was wrongly decided and conflicts with other federal court decisions that rejected the application of *per se* rules in the analysis of the reasonableness of extended leave requests under the ADA. To support this proposition, Fox cites *García-Ayala v. Lederle Parenterals, Inc.*, 212 F.3d 638, 647-48 (1st Cir. 2000), where the court ruled that the trial court erroneously granted summary judgment in favor of the defendant employer where the plaintiff, a secretary who had undergone multiple surgeries and several rounds of chemotherapy due to metastatic breast cancer, requested an extended leave until July 30, 1996, which was less than two months, as an accommodation under the ADA. The employer provided no evidence of undue hardship and filled the secretarial position during the plaintiff's medical leave and well after her termination with individuals hired from temporary agencies. *Id.* Instead, the employer argued that "the ADA can never impose an obligation on a company to grant an accommodation beyond the leave allowed under the company's own leave policy." *Id.* at 646. The trial court granted summary judgment in favor of the employer. *Id.* at 643.

¶ 52    On review, the court held that the trial court failed to make an individual assessment of the facts and erroneously "found that a requested accommodation of an extension of a leave on top of a medical leave of fifteen months was *per se* unreasonable," even though precedent established that a medical leave of absence is a reasonable accommodation under the ADA in some circumstances. *Id.* at 647. The court added that the nature of the employee's disabilities rendered her unable to provide an absolutely assured time for her return to employment, but her request for leave was not indefinite and "[a]n unvarying requirement for definiteness again departs from the need for individual factual evaluation." *Id.* at 648.

¶ 53 We find that the reasoning of *Severson* is sound and consistent with this court's interpretation of the similar Rights Act. See *Van Campen*, 326 Ill. App. 3d at 971 (holding that a plaintiff who cannot, by reason of a physical condition, perform the duties of the job in question even with accommodation is not disabled under the Rights Act). Furthermore, as discussed above, *Severson* specifically acknowledged that the reasonable accommodation inquiry is a fact-specific question, and it is possible that a brief period of leave to deal with a medical condition could be a reasonable accommodation in some circumstances. 872 F.3d at 481. *Severson* also recognized that disabled employees must be granted the same benefits as nondisabled employees. See *id.* at 482 ("[I]f an employer has a policy of creating light-duty positions for employees who are occupationally injured, then that same benefit ordinarily must be extended to an employee with a disability *** unless the company can show undue hardship."). Consequently, we do not accept Fox's assertion that *Severson* improperly applied a *per se* rule and necessarily conflicts with other federal court decisions like *García-Ayala*. Moreover, *García-Ayala*, where the plaintiff requested a definite, two-month leave, is inapposite because, here, Fox requested an indefinite leave for a minimum of three months.

¶ 54 Even if Fox was deemed a qualified individual under the ADA, her claim would fail because her requested accommodation is unreasonable as a matter of law. Determining whether a requested accommodation is reasonable is a highly fact-specific inquiry and is made on a case-by-case basis by balancing the benefit to the plaintiff and the cost to the defendant. *Dadian v. Village of Wilmette*, 269 F.3d 831, 838 (7th Cir. 2001). "[A]n accommodation is unreasonable if it imposes significant financial or administrative costs, or it fundamentally alters the nature of the program or service." *A.H. v. Illinois High School Ass'n*, 881 F.3d 587, 594 (7th Cir. 2018) (reaffirming the long-standing principle after *Severson* that the reasonableness inquiry regarding a requested accommodation is fact specific and made on a case-by-case basis); see also *Wilson v. Dollar General Corp.*, 717 F.3d 337, 345 n.7 (4th Cir. 2013) ("a leave request will not be unreasonable on its face so long as it (1) is for a limited, finite period of time; (2) consists of accrued paid leave or unpaid leave; and (3) is shown to be likely to achieve a level of success that will enable the individual to perform the essential functions of the job in question").

¶ 55 Fox's requested accommodation was unreasonable because she asked for an indefinite period of leave. Specifically, she told defendants that she needed a minimum leave of three months, to March 2015, when her physician would reevaluate her condition and determine whether she was able to return to work with or without any restrictions. Further, she failed to present evidence showing that the requested leave was likely to enable her to perform the essential functions of the job in question upon her return. There was no indication in Dr. Amin's submissions that Fox would likely be released in March 2015 to return to work without restrictions.

¶ 56 "An employer's duty to accommodate *** attaches when the employee asserts or claims that he or she would have performed the essentials of the job if afforded reasonable accommodation." *Illinois Bell Telephone Co. v. Human Rights Comm'n*, 190 Ill. App. 3d 1036, 1050 (1989). However, "nothing in the ADA requires an employer to give an employee indefinite leaves of absence." *Corder v. Lucent Technologies, Inc.*, 162 F.3d 924, 928 (7th Cir. 1998); see also *Nowak v. St. Rita High School*, 142 F.3d 999, 1004 (7th Cir. 1998) ("The ADA does not require an employer to accommodate an employee who suffers a prolonged illness by allowing him an indefinite leave of absence."). Furthermore, an employer has no obligation to

give an employee the accommodation she prefers but only some reasonable accommodation. *Corder*, 162 F.3d at 928.

¶ 57 The cases Fox cites to support her claim that her requested leave accommodation was reasonable are not factually on point with her case. For example, in *Nunes v. Wal-Mart Stores, Inc.*, the defendant had a policy guaranteeing its employees up to one year of unpaid medical leave. 164 F.3d 1243, 1247 (9th Cir. 1999). The court ruled that because the employees were guaranteed a year of unpaid medical leave, the total leave that the plaintiff required, which was less than a year, was not facially unreasonable. *Id.* In *Dark v. Curry County*, 451 F.3d 1078, 1088 (9th Cir. 2006), where the plaintiff was a heavy-equipment operator who had epilepsy and needed to transition to new medication to control his seizures, the court held that there were genuine issues of material fact regarding whether he could have been reasonably accommodated through reassignment to another position or by using his accumulated sick leave or unpaid medical leave instead of only an extended leave request, like Fox here. In *Humphrey v. Memorial Hospitals Ass'n*, 239 F.3d 1128, 1135-36 (9th Cir. 2001), the plaintiff was able to work but requested an accommodation of working from home until her condition improved.

¶ 58 Fox, Owens, Miller, Sanchez, and Adams Inc.'s human resources management agreed that Fox was unable to handle the demanding job responsibilities given her medical condition. Moreover, both Fox and her physician were clear that defendants could not help her perform her job with any kind of accommodation other than an indefinite leave of absence that would be at least three months long. Additionally, Adams Inc. stated in its letter to Fox denying her ADA leave request that there were no available alternate positions that would accommodate her significant cognitive restrictions or lengthy and indefinite leave request. The evidence in the record established that the licensed practical nurses in Fox's department could not perform their duties without the supervision, license, and registration of a wellness department manager. The evidence also showed that Adams Inc. would not be able to properly operate the department and supply medical services to students on site with a temporary hire for the lengthy and indefinite time period that Fox requested as an accommodation. Accordingly, we conclude that Fox has not met her burden to present a factual basis that arguably shows her requested lengthy leave of absence was a reasonable accommodation.

¶ 59 Regarding Fox's claim under the Rights Act, as discussed earlier, an individual is disabled under the Rights Act only if her physical condition is unrelated to her ability to perform the duties of the job in question. 775 ILCS 5/1-103(I)(1) (West 2016). "Consequently, [an individual] who cannot, by reason of a physical condition, perform the duties of the job in question even with accommodation is not [disabled] within the meaning of the Act." *Harton v. City of Chicago Department of Public Works*, 301 Ill. App. 3d 378, 390 (1998); *Whipple v. Department of Rehabilitation Services*, 269 Ill. App. 3d 554 (1995).

¶ 60 Because Fox could not demonstrate that she was an otherwise qualified individual who could perform the essential functions of her job with or without a reasonable accommodation, the circuit court properly granted summary judgment in defendants' favor on Fox's disability discrimination claims under the ADA and the Rights Act.

¶ 61                                    B. Retaliatory Discharge

¶ 62 An employer may terminate an at-will employee for any or no reason. *Hartlein v. Illinois Power Co.*, 151 Ill. 2d 142, 159 (1992). To prove a claim for retaliatory discharge, a plaintiff

employee must establish that (1) the employer discharged the plaintiff, (2) in retaliation for the plaintiff's protected activities, and (3) the discharge violates a clear mandate of public policy. *Michael v. Precision Alliance Group, LLC*, 2014 IL 117376, ¶ 31. When courts evaluate in retaliatory discharge cases whether an employer terminated an employee improperly, courts do not sit in a super-personnel position to second guess employers and their internal disciplinary measures. *Hooper v. Proctor Health Care Inc.*, 804 F.3d 846, 854 (7th Cir. 2015); *Willis v. Marion County Auditor's Office*, 118 F.3d 542, 548 (7th Cir. 1997). Where a plaintiff offers merely her own speculation to substantiate her claim that an employer sought to retaliate against her, summary judgment may be appropriate. *Harrison v. Addington*, 2011 IL App (3d) 100810, ¶ 61.

¶ 63     An employer is not liable for retaliatory discharge solely because the employer fired an employee who previously filed a workers' compensation claim. *Heldenbrand v. Roadmaster Corp.*, 277 Ill. App. 3d 664, 668 (1996). The employee must affirmatively show that the discharge was to retaliate against him for exercising the protected right. *Id.* Causation is not established if the basis for the discharge is valid and nonpretextual. *Id.*; *Hartlein*, 151 Ill. 2d at 160.

¶ 64     A medical inability to work is a legitimate nondiscriminatory reason for discharge. *Brummel v. Grossman*, 2018 IL App (1st) 170516, ¶ 55; *LaPorte v. Jostens, Inc.*, 213 Ill. App. 3d 1089, 1093 (1991); *Horton v. Miller Chemical Co.*, 776 F.2d 1351, 1359 n.11 (7th Cir. 1985); see *Hartlein*, 151 Ill. 2d at 159-60 ("Illinois law does not obligate an employer to retain an at-will employee who is medically unable to return to his assigned position"). While an employer's motive in terminating an employee is generally a fact issue, summary judgment in favor of the employer in a retaliatory discharge cases is proper when the employee cannot show causation. See *Wright v. St. John's Hospital of the Hospital Sisters of the Third Order of St. Francis*, 229 Ill. App. 3d 680, 688 (1992); *LaPorte*, 213 Ill. App. 3d at 1094. Where there is a significant gap in time between the right exercised and the employee's termination, a court may find as a matter of law that causation cannot be shown. See *Clark County School District v. Breeden*, 532 U.S. 268, 273-74 (2001) (*per curiam*) (holding that adverse action occurring nearly two years after discrimination complaint showed "no causality at all"); *Hughes v. Derwinski*, 967 F.2d 1168, 1174-75 (7th Cir. 1992) (four-month gap between complaint and adverse action could not support a reasonable inference of retaliation).

¶ 65     Fox alleged in her amended complaint that she was terminated as a result of exercising her right to use workers' compensation benefits. Defendants asserted the affirmative defense that they had legitimate, nondiscriminatory and nonretaliatory reasons for terminating Fox based on her inability to perform the necessary functions of her position. In opposing defendants' summary judgment motion, Fox submitted her signed declaration, attesting to a conversation with the former human resources manager, Henderson, who allegedly told Fox when she returned to work from her leave of absence that Adams Inc. had tried to find a reason to fire her while she was on leave. Fox also alleged that a coworker, Lindsey, told her that management wanted Lindsey to watch Fox and report any mistakes and blame her for certain matters. According to the record, however, neither Henderson nor Lindsey were privy to the circumstances surrounding Fox's termination, which occurred about 10½ months later and after several significant events and changes in Fox's circumstances.

¶ 66     The lengthy lapse of time between Fox's return from her workers' compensation leave and her termination weakens any inference that defendants fired her for exercising her protected

right to take workers' compensation leave. Moreover, several intervening events establish that retaliation was not a plausible motive for discharging her. After she returned to work in March 2014, she received in April and May 2014 two written warnings for matters that could have resulted in her discharge, but defendants exercised their discretion and kept her in her wellness manager position. Also, three months after her workers' compensation benefits ended, Fox was granted an intermittent leave of absence that started June 6, 2014, and spanned a seven-month period to receive physical therapy. Then, in about November 2014, she was diagnosed with the medical condition that prevented her from doing her job. Fox's ADA and disability submissions, which included her doctor's letters and completed questionnaire, established that she was medically unable to perform her job. Furthermore, when Carino investigated Fox's internal complaint against Sanchez, Carino concluded that he did not believe there had been a pattern of harassment directed toward Fox based on Carino's findings that the April and May 2014 written warnings were proper, Sanchez did not yell at Fox during their verbal dispute, and the witnesses did not corroborate Fox's claim of harassment by Sanchez.

¶ 67    Given the evidence of Adams Inc.'s processes to review Fox's accommodation request and later the recommendations regarding her termination, Fox's mere speculation about management's motives and her testimony about comments others made to her about management several months and several significant intervening events before her termination are not sufficient to raise a genuine issue of material fact about defendants' valid nonpretextual reason for terminating her employment, *i.e.*, her medical inability to perform her job. We conclude that the circuit court properly granted summary judgment in favor of defendants because Fox could not establish that defendants retaliated against her based on her exercising her workers' compensation benefits.

¶ 68                                C. Tortious Interference Claim

¶ 69    Fox alleged that Sanchez, to punish Fox for filing an internal complaint against Sanchez, intentionally and maliciously interfered with Fox's legitimate expectancy of continued employment with Adams Inc.

¶ 70    To prevail on a claim of tortious interference with a prospective economic advantage (continued employment), a plaintiff must show (1) she had a reasonable expectation of continued employment, (2) the defendant knew of the expectancy, (3) the defendant's intentional and unjustified interference caused the termination of the employment, and (4) damages. *Harrison*, 2011 IL App (3d) 100810, ¶ 52.

¶ 71    Generally, a corporate officer cannot interfere with the continued employment of an employee of the corporation because the officer acts on behalf of the corporation. *Id.* Even employees acting on behalf of a corporate employer cannot interfere with a fellow employee's business relationship with the employer. *Vickers v. Abbott Laboratories*, 308 Ill. App. 3d 393, 411 (1999). To show tortious interference by a corporate officer, the plaintiff must show that the corporate officer's actions were done without justification or maliciously. *Harrison*, 2011 IL App (3d) 100810, ¶ 52.

¶ 72    Fox did not have a legitimate expectation of continued employment in her position as the wellness department manager once she became medically unable to perform her job duties with a reasonable accommodation and had exhausted all of her FMLA leave and other leave allocations. Furthermore, there was no evidence that Sanchez acted solely to harm Fox. As discussed above, Carino's investigation of Fox's internal complaint against Sanchez found no

corroboration to support Fox's claims that Sanchez was harassing and intimidating her. Moreover, the recommendation to terminate Fox's employment came from her direct supervisor, Owens, and was then reviewed and agreed upon by several other individuals in addition to Sanchez. We conclude that Fox failed to raise a genuine issue of material fact that Sanchez's actions were done without justification or maliciously and the circuit court properly granted summary judgment in favor of defendants on Fox's tortious interference claim.

## III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the circuit court.

Affirmed.