2024 IL App (1st) 230284-U

No. 1-23-0284

Order filed June 14, 2024

FIFTH DIVISION

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| WILLIAM MACKLIN, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 20 CH 4096 |
| | ) | |
| ILLINOIS DEPARTMENT OF | ) | Honorable |
| TRANSPORTATION, | ) | Patrick J. Sherlock, |
| | ) | Judge, presiding. |
| Defendant-Appellee. | ) | |

PRESIDING JUSTICE MITCHELL delivered the judgment of the court.
Justice Lyle and Justice Navarro concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Judgment for the defendant is affirmed where the circuit court properly denied plaintiff's motion for judgment *n.o.v.* and motion for a new trial.

¶ 2    Plaintiff William Macklin appeals a judgment of no liability in favor of defendant Illinois Department of Transportation following a jury trial in this case brought under the Americans with Disabilities Act of 1990 (42 U.S.C. § 12101 *et seq.* (West 2020)). The issues on appeal are: (1) whether the circuit court erred in denying plaintiff's motion for judgment *n.o.v.*, because the evidence so overwhelmingly favored the plaintiff; and, in the alternative, (2) whether the circuit

court abused its discretion in denying plaintiff's motion for a new trial, because the jury's verdict was against the manifest weight of the evidence. For the following reasons, we affirm.

¶ 3                                                    I. BACKGROUND

¶ 4     Since 2011, plaintiff William Macklin has been employed by defendant Illinois Department of Transportation as a "highway maintainer lead worker." Plaintiff has a commercial driver's license (CDL), which is a requirement for his job. On October 11, 2019, plaintiff suffered a stroke, also known as a cerebrovascular accident (CVA). The stroke affected plaintiff's throat, making it impossible for him to swallow. However, he was otherwise physically unaffected and could walk normally. Defendant placed plaintiff on a nonoccupational health leave of absence while he recovered from the stroke.

¶ 5     By mid-January 2020, plaintiff could eat and swallow normally, and felt well enough to return to work. Plaintiff's boss sent him a packet of forms, including a physician's statement that needed to be filled out so that plaintiff could return to work. On January 29, 2020, plaintiff's primary care physician examined plaintiff and completed the statement. The following day, plaintiff gave the completed physician's statement to Carmen Cortese, the personnel transactions unit chief. Danielle Harrell, the acting personnel services manager, signed the physician's statement and wrote "[p]er this physician statement, William Macklin is approved to return to work." At that time, it was Harrell's understanding that, due to the physician's statement, plaintiff was cleared to return to work.

¶ 6     Cortese directed plaintiff to get a urinalysis test, which plaintiff did. Plaintiff then went to his office. Since the urinalysis test results had not returned yet, the only task plaintiff was allowed to perform was answering phone calls. Meanwhile, Cortese "received a call from the yard asking

why Mr. Macklin had been returned to work because when a person has a stroke and they have a CDL, they're supposed to remain off work for a full year." (R501). Cortese contacted the Department's medical liaison, Samuel Folayan, who asked Cortese to have the Department's medical review officers review plaintiff's physician's statement and set up a fitness for duty examination.

¶ 7    Cortese emailed plaintiff's physician's statement to employee assistant specialist Hiram White, and informed White that plaintiff was seeking to return to work after having been on leave following a stroke. White forwarded this information to medical review officer Dr. Susan Jacob. Dr. Jacob advised White that any CDL holder who has a stroke must be off work for one year before they can see a neurologist to try to return to work. Dr. Jacob based her recommendation on federal regulatory guidelines. White sent Dr. Jacob's recommendation to Cortese and Harell.

¶ 8    Cortese called plaintiff, who was still at his office, and informed him that he was being placed on paid administrative leave until he was cleared to work by a medical review officer. Plaintiff remained on paid administrative leave until Cortese called again around two weeks later, informing plaintiff that he would have to be off work for one year. Starting from February 6, 2020, plaintiff was placed on unpaid administrative leave.

¶ 9    Four days before the one-year anniversary of plaintiff's stroke, Cortese sent him forms to fill out so that he could return to work. These forms included statements from plaintiff's regular physician and a neurologist. Plaintiff completed the forms and returned to his full duties on October 29, 2020.

¶ 10    Earlier that year, in May 2020, plaintiff initiated this lawsuit, filing various claims against the Illinois Department of Transportation and some of its employees. Plaintiff ultimately

proceeded only on his discrimination claim under the ADA against the Department, alleging that it had intentionally discriminated against him by placing him on administrative leave between January 30, 2020, and October 28, 2020, due to his stroke. At trial, plaintiff testified that his job as a lead worker was to supervise the highway maintainers at Stevenson Yard and perform various administrative tasks, such as answering phone calls, handling vacation requests, and assigning daily tasks. Plaintiff testified that he does not drive a commercial motor vehicle in the course of performing his duties as a lead worker, despite the fact that a CDL is required for his position.

¶ 11    The jury received a special verdict form which asked six questions. The first question asked whether plaintiff was "regarded as having a disability under the ADA by Defendant?" The jury answered "no" to this question, and therefore, following the court's instructions, did not provide an answer to the remaining five questions. Plaintiff filed a motion for judgment *n.o.v.* and a new trial under section 2-1202(b) of the Code of Civil Procedure, which the circuit court denied. This timely appeal followed. Ill. S. Ct. R. 303 (eff. July 1, 2017).

¶ 12                                II. ANALYSIS

¶ 13                   A. Plaintiff's Motion for Judgment *N.O.V.*

¶ 14    Plaintiff argues that the circuit court erred when it denied his motion for judgment *n.o.v.* A circuit court's decision to deny a motion for judgment *n.o.v.* is reviewed *de novo*. *Ries v. City of Chicago*, 242 Ill. 2d 205, 215 (2011). However, judgment *n.o.v.* should be granted "only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors [the] movant that no contrary verdict based on that evidence could ever stand." *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 510 (1967). This is a stricter standard than the manifest weight of the evidence. See *Maple v. Gustafson*, 151 Ill. 2d 445, 453 (1992) ("a

judgment *n.o.v.* may not be granted merely because a verdict is against the manifest weight of the evidence.").

¶ 15 Under the ADA, "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to *** [the] terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a) (West 2020). To prevail in his discrimination claim under the ADA, plaintiff must show that (1) he has a disability, (2) he is "otherwise qualified to perform the essential functions of his job with or without reasonable accommodation," and (3) he experienced an adverse job action due to his disability. *Fox v. Adams & Associates, Inc.*, 2020 IL App (1st) 182470, ¶ 42. An individual has a disability under the ADA if he or she has (1) "a physical or mental impairment that substantially limits one or more major life activities," (2) has "a record of such an impairment," or (3) is "regarded as having such an impairment." 42 U.S.C. § 12102(1) (West 2020). Plaintiff argues solely that he was regarded as having a disability by defendant.

¶ 16 At trial, the jury was presented with conflicting evidence regarding whether Illinois Department of Transportation employees regarded plaintiff as having a disability, whether plaintiff drove commercial motor vehicles, and whether driving commercial motor vehicles was an essential function of plaintiff's job. The jury weighed this evidence and issued a verdict in favor of defendant. As the jury was presented with sufficient evidence to find for either party, judgment *n.o.v.* would be improper and the circuit court did not err in denying plaintiff's motion. See *Maple*, 151 Ill. 2d at 454 ("The court has no right to enter a judgment *n.o.v.* if there is any evidence, together with reasonable inferences to be drawn therefrom, demonstrating a substantial factual dispute, or where the assessment of credibility of the witnesses or the determination regarding conflicting evidence is decisive to the outcome.").

¶ 17                              B. Plaintiff's Motion for a New Trial

¶ 18    Plaintiff argues that the circuit court abused its discretion in denying his motion for a new trial because the jury's verdict was against the manifest weight of the evidence. "On a motion for a new trial, the court, after considering the evidence, will set aside the jury's verdict and order a new trial if the verdict is contrary to the manifest weight of the evidence." *Steed v. Rezin Orthopedics & Sports Medicine*, 2021 IL 125150, ¶ 44. A jury verdict is against the manifest weight of the evidence only when, "considered in the light most favorable to the appellee," "the opposite conclusion is clearly evident or when the verdict appears to be arbitrary or to be unsupported by the evidence." *Koehler v. Packer Group, Inc.*, 2016 IL App (1st) 142767, ¶ 57 (quoting *Niewold v. Fry*, 306 Ill. App. 3d 735, 747 (1999)). The standard of review for a circuit court's denial of a post-trial motion for a new trial is abuse of discretion. *Obszanski v. Foster Wheeler Construction, Inc.*, 328 Ill. App. 3d 550, 554 (2002).

¶ 19    The following jury instructions were given regarding the definition of "regarded as" having a disability:

> "Under the ADA, a person is regarded as having a disability if, [1], the employer believes that the person has a physical or mental impairment that substantially limits his ability to work; or [2], the employer believes that an actual impairment substantially limits his ability to work when it does not because of the attitude that others have about the impairment; or [3], the person does not have any impairment, but the employer treats him as having an impairment that substantially limits his ability to work."

¶ 20    Plaintiff argues that he put forth "overwhelming evidence" that satisfied all three prongs of this definition, and that therefore the jury's verdict was against the manifest weight of the

evidence. For the first prong, plaintiff argues that White's and Dr. Jacob's assessment of plaintiff's condition shows that they believed that his stroke impaired his ability to drive commercial motor vehicles safely. For the second prong, plaintiff argues that the attitude of Dr. Jacob and the studies cited in the federal regulatory guidance Dr. Jacob referred to caused White and Cortese to believe that plaintiff's stroke substantially limited his ability to work, even though it did not. For the third prong, plaintiff argues that he did not have any impairment due to his stroke by January 29, 2020, but that defendant still treated him as if he had an impairment that substantially limited his ability to work, i.e., that his stroke and his physical condition after the stroke meant that he could not safely drive a commercial motor vehicle.

¶ 21    Defendant argues that there was no evidence at trial that Harrell, Cortese, or White made any assessment of plaintiff's ability to drive or work. Defendant contends that it placed plaintiff on administrative leave because allowing him to return to work would be contrary to its interpretation of federal guidelines, rather than because it regarded him as having an impairment that substantially limited his ability to work. In support of its argument, defendant emphasizes the fact that Harrell initially approved plaintiff's return to work request and the plaintiff was only placed on administrative leave later that day, once Dr. Jacob had given her recommendation pursuant to her interpretation of federal guidelines for CDL holders. Both White and Harrell testified that plaintiff was placed on administrative leave in January 2020 based on Dr. Jacob's recommendation that he was not qualified under federal guidelines to drive commercial motor vehicles during that time.

¶ 22    Plaintiff contends that defendant's argument should be rejected because defendant "cannot simply farm the decision-making function out to a doctor and then argue it is absolved of liability

for the doctor's decision." *Equal Employment Opportunity Comm'n v. Amsted Rail Co.*, 280 F. Supp. 3d 1141, 1156 (S.D. Ill. 2017). However, the quoted language comes from the district court's analysis of the causation element of the plaintiff's ADA claim, not the court's analysis of whether the plaintiff was regarded as disabled. Whether or not Dr. Jacob's interpretation of federal guidelines was reasonable or whether the federal regulations actually applied to plaintiff is irrelevant to our consideration here of whether defendant regarded plaintiff as having a disability.

¶ 23    The evidence presented at trial was sufficient to support the jury's verdict that defendant did not regard plaintiff as having a disability. The jury could have reasonably believed that plaintiff was put on administrative leave because defendant's employees believed that leave was required by federal guidelines rather than because they believed that plaintiff's stroke substantially limited his ability to do his job. A jury verdict will not be set aside "merely because [the jury] could have determined the credibility of the witnesses differently or could have drawn different inferences of fact." *Niewold v. Fry*, 306 Ill. App. 3d 735, 748 (1999). The jury's verdict was not against the manifest weight of the evidence, so the circuit court did not abuse its discretion when it denied plaintiff's motion for a new trial.[1]

¶ 24    Plaintiff cites two federal district cases in which the courts found that the plaintiffs had presented genuine issues of material fact about whether their employers had regarded them as disabled due to their strokes. *Sams v. City of Chicago*, No. 13 C 7625, 2018 WL 4679581, at *9 (N.D. Ill. Sept. 28, 2018); *Equal Employment Opportunity Comm'n v. UPS Ground Freight, Inc.*,

---

[1]    Plaintiff contends that defendant's arguments regarding Dr. Jacob's interpretation of federal guidelines are "hearsay-supported" because Dr. Jacob did not testify at trial. However, plaintiff did not make hearsay objections at trial or in its posttrial motion regarding testimony concerning Dr. Jacob's recommendation. Therefore, this argument is waived. *People v. Maberry*, 193 Ill. App. 3d 250, 260 (1990).

443 F. Supp. 3d 1270, 1285-87 (D. Kan. 2020). However, in both cases, the courts only considered whether there was sufficient evidence to move past summary judgment and proceed to trial. Here, the case proceeded to trial and the jury issued a verdict. These cases do not support plaintiff's argument that the jury's verdict in this case was against the manifest weight of the evidence.

¶ 25    Since whether defendant regarded plaintiff as having a disability is a required element of his discrimination claim under the ADA, we need not discuss whether plaintiff would have prevailed at trial on the other elements of his discrimination claim.

¶ 26                                    III. CONCLUSION

¶ 27    The judgment of the circuit court of Cook County is affirmed.

¶ 28    Affirmed.